BURNS ET AL. *v.* WILSON, SECRETARY
OF DEFENSE, ET AL.

No. 422.   Argued February 5, 1953.—Decided June 15, 1953.

*Robert L. Carter* and *Frank D. Reeves* argued the cause
for petitioners.   With them on the brief were *Thurgood
Marshall, Charles W. Quick* and *Herbert O. Reid.*

*Solicitor General Cummings* argued the cause for respondents. With him on the brief were *Assistant Attorney General Murray, Oscar H. Davis, Beatrice Rosenberg* and *Walter Kiechel, Jr.*

MR. CHIEF JUSTICE VINSON announced the judgment of the Court in an opinion in which MR. JUSTICE REED, MR. JUSTICE BURTON and MR. JUSTICE CLARK join.

Tried separately by Air Force courts-martial on the Island of Guam, petitioners were found guilty of murder and rape and sentenced to death. The sentences were confirmed by the President, and petitioners exhausted all remedies available to them under the Articles of War for review of their convictions by the military tribunals. They then filed petitions for writs of habeas corpus in the United States District Court for the District of Columbia.

In these applications petitioners alleged that they had been denied due process of law in the proceedings which led to their conviction by the courts-martial. They charged that they had been subjected to illegal detention; that coerced confessions had been extorted from them; that they had been denied counsel of their choice and denied effective representation; that the military authorities on Guam had suppressed evidence favorable to them, procured perjured testimony against them and otherwise interfered with the preparation of their defenses. Finally, petitioners charged that their trials were conducted in an atmosphere of terror and vengeance, conducive to mob violence instead of fair play.

The District Court dismissed the applications without hearing evidence, and without further review, after satisfying itself that the courts-martial which tried petitioners had jurisdiction over their persons at the time of the trial and jurisdiction over the crimes with which they were charged as well as jurisdiction to impose the sentences

which petitioners received. 104 F. Supp. 310, 312. The Court of Appeals affirmed the District Court's judgment, after expanding the scope of review by giving petitioners' allegations full consideration on their merits, reviewing in detail the mass of evidence to be found in the transcripts of the trial and other proceedings before the military court. 91 U. S. App. D. C. 208, 202 F. 2d 335.

We granted certiorari, 344 U. S. 903. Petitioners' allegations are serious, and, as reflected by the divergent bases for decision in the two courts below, the case poses important problems concerning the proper administration of the power of a civil court to review the judgment of a court-martial in a habeas corpus proceeding.

In this case, we are dealing with habeas corpus applicants who assert—rightly or wrongly—that they have been imprisoned and sentenced to death as a result of proceedings which denied them basic rights guaranteed by the Constitution. The federal civil courts have jurisdiction over such applications. By statute, Congress has charged them with the exercise of that power.[1] Accordingly, our initial concern is not whether the District Court has any power at all to consider petitioners' applications; rather our concern is with the manner in which the Court should proceed to exercise its power.

The statute which vests federal courts with jurisdiction over applications for habeas corpus from persons confined by the military courts is the same statute which vests them with jurisdiction over the applications of persons confined by the civil courts. But in military habeas corpus the inquiry, the scope of matters open for review, has always been more narrow than in civil cases. *Hiatt* v. *Brown,* 339 U. S. 103 (1950). Thus the law which governs a civil court in the exercise of its jurisdiction over military habeas corpus applications cannot simply be

---

[1] 28 U. S. C. § 2241. See *In re Yamashita,* 327 U. S. 1, 8 (1946).

140

assimilated to the law which governs the exercise of that power in other instances. It is *sui generis;* it must be so, because of the peculiar relationship between the civil and military law.

Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment.[2] This Court has played no role in its development; we have exerted no supervisory power over the courts which enforce it; the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment.[3] The Framers expressly entrusted that task to Congress.

Indeed, Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights. Only recently the Articles of War were completely revised, and thereafter, in conformity with its purpose to integrate the armed services, Congress established a Uniform Code of Military Justice applicable to all members of the military establishment.[4] These enactments were prompted by a desire to meet objections and criticisms lodged against court-martial procedures in the aftermath of World War II. Nor was

[2] See *Dynes* v. *Hoover,* 20 How. 65, 82 (1858); cf. *In re Vidal,* 179 U. S. 126 (1900); *Reaves* v. *Ainsworth,* 219 U. S. 296 (1911); *Ex parte Quirin,* 317 U. S. 1 (1942).

[3] See, *e. g., In re Grimley,* 137 U. S. 147 (1890); *Hiatt* v. *Brown,* 339 U. S. 103 (1950).

[4] See 62 Stat. 627 (revised Articles of War), 64 Stat. 107 (the Uniform Code of Military Justice). For history of the evolution and purpose behind these enactments, see, *e. g.,* H. R. Rep. No. 1034, 80th Cong., 1st Sess.; S. Rep. No. 1268, 80th Cong., 2d Sess.; Report of the War Department Advisory Committee on Military Justice (1946); H. R. Rep. No. 491, 81st Cong., 1st Sess.; S. Rep. No. 486, 81st Cong., 1st Sess.

this a patchwork effort to plug loopholes in the old system of military justice. The revised Articles and the new Code are the result of painstaking study; they reflect an effort to reform and modernize the system—from top to bottom.[5]

Rigorous provisions guarantee a trial as free as possible from command influence, the right to prompt arraignment, the right to counsel of the accused's own choosing, and the right to secure witnesses and prepare an adequate defense.[6] The revised Articles, and their successor—the new Code—also establish a hierarchy within the military establishment to review the convictions of courts-martial, to ferret out irregularities in the trial, and to enforce the procedural safeguards which Congress determined to guarantee to those in the Nation's armed services.[7] And finally Congress has provided a special post-conviction remedy within the military establishment, apart from ordinary appellate review, whereby one convicted by a court-martial may attack collaterally the judgment under which he stands convicted.[8]

---

[5] *Ibid.* See Holtzoff, *Administration of Justice in the United States Army,* 22 N. Y. U. L. Q. Rev. 1 (1947); Morgan, *The Background of The Uniform Code of Military Justice,* 6 Vand. L. Rev. 169 (1953).

[6] For provisions to this effect in the revised Articles of War, see, *e. g.,* 10 U. S. C. (Supp. II) §§ 1482, 1493, 1495, 1542, 1560. For provisions in the Uniform Code of Military Justice, see, *e. g.,* 50 U. S. C. (Supp. V) §§ 564, 567, 591, 602, 612, 621.

[7] 10 U. S. C. (Supp. II) § 1521. The Uniform Code of Military Justice established the Court of Military Appeals, which is composed of civilians. It automatically reviews all capital cases and has discretionary jurisdiction over other cases. It is the highest court in the military system. 50 U. S. C. (Supp. V) § 654. See Walker and Niebank, *The Court of Military Appeals—Its History, Organization and Operation,* 6 Vand. L. Rev. 228 (1953).

[8] 62 Stat. 639, 10 U. S. C. (Supp. III) § 1525. See *Gusik* v. *Schilder,* 340 U. S. 128 (1950). This provision was also made a part of the Uniform Code of Military Justice. 64 Stat. 132, 50 U. S. C. (Supp. V) § 660; 64 Stat. 147, 50 U. S. C. (Supp. V) § 740.

The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights. In military habeas corpus cases, even more than in state habeas corpus cases, it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings—of the fair determinations of the military tribunals after all military remedies have been exhausted. Congress has provided that these determinations are "final" and "binding" upon all courts.[9] We have held before that this does not displace the civil courts' jurisdiction over an application for habeas corpus from the military prisoner. *Gusik* v. *Schilder,* 340 U. S. 128 (1950). But these provisions do mean that when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence. *Whelchel* v. *McDonald,* 340 U. S. 122 (1950).

We turn, then, to this case.

Petitioners' applications, as has been noted, set forth serious charges—allegations which, in their cumulative effect, were sufficient to depict fundamental unfairness in the process whereby their guilt was determined and their death sentences rendered. Had the military courts manifestly refused to consider those claims, the District Court was empowered to review them *de novo.* For the constitutional guarantee of due process is meaningful enough, and sufficiently adaptable, to protect soldiers—as well as civilians—from the crude injustices of a trial so conducted that it becomes bent on fixing guilt by dispensing with rudimentary fairness rather than finding

---

[9] The revisions of the Articles of War, 10 U. S. C. (Supp. II) § 1521 (h), and the Uniform Code of Military Justice, 50 U. S. C. (Supp. V) § 663, both provided that the decisions of the appellate military tribunals should be "final" and should be "binding" upon the courts.

truth through adherence to those basic guarantees which have long been recognized and honored by the military courts as well as the civil courts.

Petitioners asserted: they had been arrested and confined incommunicado by officers of the military government of Guam; they were mistreated and subjected to continuous questioning without being informed of their rights; petitioner Dennis finally confessed, after police officers confronted him with the confession of Calvin Dennis—an alleged accomplice in the crime; after a period of about three weeks of this confinement, the petitioners were turned over to the Air Force; the military authorities "planted" real evidence—the victim's smock with hairs from petitioner Dennis' body attached—in a truck which petitioners had driven on the night of the crime; they further sought to "contrive" a conviction by coercing various witnesses to testify against petitioners; both petitioners were denied the benefit of counsel until a short while before trial, and petitioner Dennis was denied representation of his choice when counsel he sought was removed from the case by the commanding officer of his unit; the trial was conducted in an atmosphere of "hysteria" because the crime had been particularly brutal and the authorities had "created" a demand for vengeance; the "coerced" confessions were admitted at the trial and so was the incriminating confession of Calvin Dennis— which had been procured by threats and deceit.[10]

Answering the habeas corpus applications, respondents denied that there had been any violation of petitioners'

---

[10] Petitioners submitted the affidavits of petitioner Dennis, an Air Force chaplain, a former federal civilian employee on Guam and Col. Daly, a former Air Force officer who had been attached to the Judge Advocate's staff on Guam, and who was, apparently, originally to have been defense counsel to the accused.

These affidavits tended to back up the general allegations set forth in the applications for habeas corpus.

rights and attached to their answer copies of the record of each trial, the review of the Staff Judge Advocate, the decision of the Board of Review in the office of the Judge Advocate General, the decision (after briefs and oral argument) of the Judicial Council in the Judge Advocate General's office, the recommendation of the Judge Advocate General, the action of the President confirming the sentences, and also the decision of the Judge Advocate General denying petitions for new trials under Article 53 of the Articles of War.

These records make it plain that the military courts have heard petitioners out on every significant allegation which they now urge. Accordingly, it is not the duty of the civil courts simply to repeat that process—to re-examine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for habeas corpus. It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims. *Whelchel* v. *McDonald, supra.* We think they have.

The military reviewing courts scrutinized the trial records before rejecting petitioners' contentions. In lengthy opinions, they concluded that petitioners had been accorded a complete opportunity to establish the authenticity of their allegations, and had failed. Thus, the trial records were analyzed to show that the circum-stances fully justified the decision to remove Dennis' original choice of defense counsel; [11] that each petitioner had

---

[11] See *Hiatt* v. *Brown*, 339 U. S. 103 (1950). Dennis asked to be represented by one Lt. Col. Daly. This officer, prior to the trial, was charged with serious misconduct and moral turpitude. When informed of this, Dennis announced his satisfaction with the "regularly appointed defense counsel." At his trial, however, Dennis again asked if Daly could assist in his defense. The court was then fully informed concerning Daly's arrest and his dubious status, and

declared, at the beginning of his trial, that he was ready to proceed; that each was ably represented; that the trials proceeded in an orderly fashion—with that calm degree of dispassion essential to a fair hearing on the question of guilt; that there was exhaustive inquiry into the background of the confessions—with the taking of testimony from the persons most concerned with the making of these statements, including petitioner Dennis who elected to take the stand.[12] And finally it was demonstrated that the issues arising from the charges relating to the use of perjured testimony and planted evidence were either explored or were available for exploration at the trial.[13]

---

it sustained the commanding officer's determination that Daly was not "available" to participate in the trial. Dennis was represented by another officer who had been appointed a full month before. Defense counsel was assisted by two other legal officers who had also participated in the pretrial investigation of the case.

[12] We reject petitioners' contentions that the rule of *McNabb* v. *United States,* 318 U. S. 332 (1943), renders the confessions inadmissible and requires the civil courts to hold that the courts-martial were void. The *McNabb* rule is a rule of evidence in the federal civil courts; its source is not "due process of law," but this Court's power of "supervision of the administration of criminal justice in the federal courts." See 318 U. S., at 340; cf. *Gallegos* v. *Nebraska,* 342 U. S. 55 (1951). We have of course no such supervisory power over the admissibility of evidence in courts-martial.

[13] The allegations in the applications for habeas corpus relating to perjured and "planted" evidence were supported by the affidavits of Col. Daly and Mrs. Hill, the federal civilian employee. But they were both witnesses for the defense at the Dennis trial, and Daly was a witness for the prosecution in the Burns trial. Many of the matters covered in the Daly and Hill affidavits were covered at the trial; opportunity was available to question each witness about his or her relationship with the investigation of the case.

Moreover we note that the Judge Advocate General, during review of this case under former Article of War 53 (now 50 U. S. C. (Supp. V) § 740), ordered a special investigation by the office of the Inspector General of some of the Daly and Hill charges, and concluded

Petitioners have failed to show that this military review was legally inadequate to resolve the claims which they have urged upon the civil courts. They simply demand an opportunity to make a new record, to prove *de novo* in the District Court precisely the case which they failed to prove in the military courts. We think, under the circumstances, that due regard for the limitations on a civil court's power to grant such relief precludes such action. We think that although the Court of Appeals may have erred in reweighing each item of relevant evidence in the trial record, it certainly did not err in holding that there was no need for a further hearing in the District Court. Accordingly its judgment must be

*Affirmed.*

MR. JUSTICE JACKSON concurs in the result.

MR. JUSTICE MINTON, concurring in the affirmance of the judgment.

I do not agree that the federal civil courts sit to protect the constitutional rights of military defendants, except to the limited extent indicated below. Their rights are committed by the Constitution [1] and by Congress acting in pursuance thereof [2] to the protection of the military courts, with review in some instances by the President. Nor do we sit to review errors of law committed by military courts.

---

that they were unfounded. This report is not a part of the record, and we cannot rely upon it to sustain our conclusions, but we can cite it as an example of the efforts of the military to resolve and not ignore petitioners' charges.

[1] Art. I, § 8, cl. 14.

[2] This particular case comes up under the former Revised Articles of War, 62 Stat. 627, now supplanted by the Uniform Code of Military Justice, 64 Stat. 107, 50 U. S. C. (Supp. V) § 551 *et seq.*

*J*

This grant to set up military courts is as distinct as the grant to set up civil courts. Congress has acted to implement both grants. Each hierarchy of courts is distinct from the other. We have no supervisory power over the administration of military justice, such as we have over civil justice in the federal courts. Due process of law for military personnel is what Congress has provided for them in the military hierarchy in courts established according to law. If the court is thus established, its action is not reviewable here. Such military court's jurisdiction is exclusive but for the exceptions contained in the statute, and the civil courts are not mentioned in the exceptions. 64 Stat. 115, 50 U. S. C. (Supp. V) § 581.

If error is made by the military courts, to which Congress has committed the protection of the rights of military personnel, that error must be corrected in the military hierarchy of courts provided by Congress. We have but one function, namely, to see that the military court has jurisdiction, not whether it has committed error in the exercise of that jurisdiction.

The rule was clearly stated in the early case of *In re Grimley,* 137 U. S. 147, 150, in these words:

> "It cannot be doubted that the civil courts may in any case inquire into the jurisdiction of a court-martial, and if it appears that the party condemned was not amenable to its jurisdiction, may discharge him from the sentence. And, on the other hand, it is equally clear that by *habeas corpus* the civil courts exercise no supervisory or correcting power over the proceedings of a court-martial; and that no mere errors in their proceedings are open to consideration. The single inquiry, the test, is jurisdiction. . . ."

This case was cited and an excerpt from the above quoted with approval in *Hiatt* v. *Brown,* 339 U. S. 103, 111. After approving *In re Grimley,* we rejected the

broader claim of the respondent for review to determine whether certain action of the military court had denied him due process of law and said:

"In this case the court-martial had jurisdiction of the person accused and the offense charged, and acted within its lawful powers. The correction of any errors it may have committed is for the military authorities which are alone authorized to review its decision. . . ."

With this understanding, I concur in affirming the judgment.

MR. JUSTICE FRANKFURTER.

This case raises questions of great delicacy and difficulty. On the one hand is proper regard for habeas corpus, "the great writ of liberty"; on the other hand the duty of civil courts to abstain from intervening in matters constitutionally committed to military justice. The case comes to us on a division of opinion in the Court of Appeals. In the interest of enabling indigent litigants to have the case reviewed in this Court without incurring the enormous cost of printing, we have required to be brought here only one copy of a record consisting of a mass of materials in their original form. Consideration of the case has fallen at the close of the Term. Obviously it has not been possible for every member of the Court to examine such a record. In any event there has not been time for its consideration by me. An examination of it, however, is imperative in view of what seem to me to be the essential issues to be canvassed. I can now only outline the legal issues that are implicit in the case.

The right to invoke habeas corpus to secure freedom is not to be confined by any *a priori* or technical notions of "jurisdiction." See my dissent in *Sunal* v. *Large*, 332 U. S. 174, 184. And so, if imprisonment is the result of a

denial of due process, it may be challenged no matter under what authority of Government it was brought about. Congress itself in the exercise of the war power "is subject to applicable constitutional limitations." *Hamilton* v. *Kentucky Distilleries Co.,* 251 U. S. 146, 156. It is therefore not freed from the requirements of due process of the Fifth Amendment. But there is no table of weights and measures for ascertaining what constitutes due process. Indeed, it was common ground, in the majority and dissenting opinions below, that due process, in the language of Judge Bazelon, is not "the same in a military setting as it is in a civil setting." 91 U. S. App. D. C. 208, at 225, 202 F. 2d 335, at 352.

I cannot agree that the only inquiry that is open on an application for habeas corpus challenging a sentence of a military tribunal is whether that tribunal was legally constituted and had jurisdiction, technically speaking, over the person and the crime. Again, I cannot agree that the scope of inquiry is the same as that open to us on review of State convictions; the content of due process in civil trials does not control what is due process in military trials. Nor is the duty of the civil courts upon habeas corpus met simply when it is found that the military sentence has been reviewed by the military hierarchy, although in a debatable situation we should no doubt attach more weight to the conclusions reached on controversial facts by military appellate courts than to those reached by the highest court of a State.

In the light of these considerations I cannot assume the responsibility, where life is at stake, of concurring in the judgment of the Court. Equally, however, I would not feel justified in reversing the judgment. My duty, as I see it, is to resolve the dilemma by doing neither. It is my view that this is not just a case involving individuals. Issues of far-reaching import are at stake which call for further consideration. They were not explored in all

their significance in the submissions made to the Court. While this case arose prior to the new Code of Military Justice, 64 Stat. 107, it necessarily will have a strong bearing upon the relations of the civil courts to the new Court of Military Appeals. The short of it is that I believe this case should be set down for reargument.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

The charges which are made concerning the confessions exacted from these accused are quite lurid. But the basic, undisputed facts, though not dramatic, leave the clear impression that one of the petitioners was held incommunicado and repeatedly examined over a 5-day period until he confessed.

*Herman Dennis.*—On January 7, 1949, Herman Dennis was taken into custody by the civil authorities. (At this time Guam was under a government supervised by the Navy.) He was asked or told to give consent to take a lie detector test. He was given the test and thereafter confined. Instructions were issued that he was to talk to no one except the two investigators, one the Assistant Chief of Police of Guam, and the other a member of the Berkeley, California, police department who had been called in to assist in the solution of the crime. Dennis was questioned intermittently by these two officers from Friday, January 7, until Tuesday, January 11. On the latter date he was informed that his "half brother," Calvin Dennis, had confessed. He refused to believe it. Calvin was brought before him and asked if he had confessed. Calvin answered "yes" and was immediately taken away.

During the evening of January 11, Herman agreed to confess and executed two hand-written notes. The investigators left him alone at about midnight. The next

---

*[See also further opinion of MR. JUSTICE FRANKFURTER, *post*, p. 844.]

morning he was taken to an office and, in the presence of several officers, he made a confession which was typed and signed by Herman on each page. He made another such statement the next day, January 13, 1949. Later he repudiated all his confessions.

He was taken before a magistrate on January 17, 1949, and turned over to the military authorities on January 29, 1949. He was formally charged with rape and murder on February 1, 1949, and tried by general court-martial from May 9 to May 16, 1949. The confessions were introduced over objection by the defense. Herman took the stand and testified that they were involuntary and untruthful. The trial resulted in conviction and sentence of death.

*Robert Burns.*—This defendant was taken into custody by the civil authorities on January 7, 1949. He was turned over to the military on January 30, 1949. He did not confess. He was formally charged with rape and murder on February 20, 1949, and was tried by general court-martial from May 27, 1949, to May 30, 1949. Calvin Dennis testified against him. It appears that Calvin had previously been tried and convicted of the same crimes and sentenced to death. His sentence was later commuted to life imprisonment by the President.

Those are the undisputed facts concerning the confessions.

The role of Calvin Dennis is not too clear; and he is not a petitioner here. But it appears that he was arrested at the same time as the others and confessed some time between Friday, January 7 and Tuesday, January 11. His affidavit attached to the petition below alleges that he was beaten and forced to confess and that the authorities promised him money and a light sentence if he would implicate the others. He says that his testimony at the Burns trial was false and given under duress. Both he and Herman now state that they are not half brothers and are in fact in no way related.

I think petitioners are entitled to a judicial hearing on the circumstances surrounding their confessions.

Congress has power by Art. I, § 8, cl. 14 of the Constitution "To make Rules for the Government and Regulation of the land and naval Forces." The rules which Congress has made relative to trials for offenses by military personnel are contained in the Uniform Code of Military Justice. 64 Stat. 108, 50 U. S. C. § 551 *et seq.* Those rules do not provide for judicial review. But it is clear from our decisions that habeas corpus may be used to review some aspects of a military trial.

The question whether the military tribunal has exceeded the powers granted it by Congress may be tested by habeas corpus. See *Hiatt* v. *Brown,* 339 U. S. 103; *Whelchel* v. *McDonald,* 340 U. S. 122; *Gusik* v. *Schilder,* 340 U. S. 128. But it is also clear that that review is not limited to questions of "jurisdiction" in the historic sense.

Of course the military tribunals are not governed by the procedure for trials prescribed in the Fifth and Sixth Amendments. That is the meaning of *Ex parte Quirin,* 317 U. S. 1, holding that indictment by grand jury and trial by jury are not constitutional requirements for trials before military commissions. Nor do the courts sit in review of the weight of the evidence before the military tribunal. *Whelchel* v. *McDonald, supra,* p. 124. But never have we held that all the rights covered by the Fifth and the Sixth Amendments were abrogated by Art. I, § 8, cl. 14 of the Constitution, empowering Congress to make rules for the armed forces. I think it plain from the text of the Fifth Amendment that that position is untenable. The Fifth Amendment provides:

> "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia,

"when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

What reason is there for making one specific exception for cases arising in the land or naval forces or in the militia if none of the Fifth Amendment is applicable to military trials? Since the requirement for indictment before trial is the only provision of the Fifth Amendment made inapplicable to military trials, it seems to me clear that the other relevant requirements of the Fifth Amendment (including the ban on coerced confessions) are applicable to them. And if the ban on coerced confessions is applicable, how can it mean one thing in civil trials and another in military trials?

The prohibition against double jeopardy is one of those provisions. And consistently with the construction I urge, we held in *Wade* v. *Hunter,* 336 U. S. 684, 690, that court-martial action was subject to that requirement of the Fifth Amendment. The mandates that no person be compelled to be a witness against himself or be deprived of life or liberty without due process of law are as specific and as clear. They too, as the Court of Appeals held, are constitutional requirements binding on military tribunals.

If a prisoner is coerced by torture or other methods to give the evidence against him, if he is beaten or slowly "broken" by third-degree methods, then the "trial" before the military tribunal becomes an empty ritual. The real trial takes place in secret where the accused without benefit of counsel succumbs to physical or psychological pressures. A soldier or sailor convicted in that manner has

been denied due process of law; and, like the accused in criminal cases (see *Moore* v. *Dempsey,* 261 U. S. 86; *Johnson* v. *Zerbst,* 304 U. S. 458; *Walker* v. *Johnston,* 312 U. S. 275; *Pyle* v. *Kansas,* 317 U. S. 213; *Von Moltke* v. *Gillies,* 332 U. S. 708), he should have relief by way of habeas corpus.

The opinion of the Court is not necessarily opposed to this view. But the Court gives binding effect to the ruling of the military tribunal on the constitutional question, provided it has given fair consideration to it.

If the military agency has fairly and conscientiously applied the standards of due process formulated by this Court, I would agree that a rehash of the same facts by a federal court would not advance the cause of justice. But where the military reviewing agency has not done that, a court should entertain the petition for habeas corpus. In the first place, the military tribunals in question are federal agencies subject to no other judicial supervision except what is afforded by the federal courts. In the second place, the rules of due process which they apply are constitutional rules which we, not they, formulate.

The *undisputed* facts in this case make a prima facie case that our rule on coerced confessions expressed in *Watts* v. *Indiana,* 338 U. S. 49, was violated here. No court has considered the question whether repetitious questioning over a period of 5 days while the accused was held incommunicado without benefit of counsel violated the Fifth Amendent. The highest reviewing officer, the Judge Advocate General of the Air Force, said only this:

> "After reading and re-reading the record of trial, there is no reasonable doubt in my mind that all the confessions were wholly voluntary, as the court decided, and were properly admitted. Where the evidence as to whether there was coercion is conflict-

ing, or where different inferences may fairly be drawn from the admitted facts, the question whether a confession was voluntary is for the triers of the facts (*Lyons* v. *Oklahoma,* 322 U. S. 596; *Lisenba* v. *California,* 314 U. S. 219). Thus the court's decision on the voluntary nature of the testimony, arrived at from first-hand hearing and observation, is presumptively correct and will not be disturbed unless manifestly erroneous (*MGM Corporation* v. *Fear,* 104 F. 2d 892; ACM 3597, *Maddle,* 4 Court-Martial Reports [AF] 573)."

There has been at no time any considered appraisal of the facts surrounding these confessions in light of our opinions. Before these men go to their death, such an appraisal should be made.