**Fred R. CHANDLER, Clifton Franks, Petitioners,**

v.

**T. W. MARKLEY, Warden, United States Penitentiary, Terre Haute, Indiana, Respondent.**

**No. TH 60-C-57.**

United States District Court
S. D. Indiana,
Terre Haute Division.

Sept. 19, 1960.

On Further Consideration
Dec. 27, 1960.

Alfred Avins, Chicago, Ill., for petitioners.

Philip Melangton, Jr., Asst. U. S. Atty., Don A. Tabbert, U. S. Atty., Indianapolis, Ind., for respondent.

STECKLER, Chief Judge.

This is an action for writ of habeas corpus. Petitioners, while soldiers assigned for duty with the 85th Infantry Regiment, 10th Infantry Division at Bamberg, Germany, were tried and convicted, along with five other soldiers, of the offense of rape, in violation of Article 120, Uniform Code of Military Justice (10 U.S.C. § 920), by a general court-martial convened at Wurzburg, Germany, in August of 1956. The joint rape was allegedly committed upon a fifteen year old German girl on July 9, 1956, near Bamberg, some sixty miles from Wurzburg. Petitioners were sentenced to dishonorable discharge, total forfeiture of pay and allowances, and life imprisonment.

The findings of guilty and the sentences were approved by the convening authority, upon the recommendation of the

Staff Judge Advocate, who reviewed the entire record. Thereafter, a Board of Review of the Army affirmed the findings of guilty and the sentences, but reduced the prison terms of petitioners to thirty years. The Court of Military Appeals granted a review limited to the issues of command influence and denial of a change of venue. After a complete review of these issues, the Court of Military Appeals affirmed the decision of the Board of Review.

Here, petitioners again contend that they were denied a fair trial and due process of law because of inflammatory newspaper articles, prejudgment of the case by the army's European commanders and their exercise of command control and influence, and bias on the part of members of the court-martial.

Respondent, in conjunction with his return, has filed a complete transcript of the trial, the review of the Staff Judge Advocate, the decision of the Board of Review, and the opinion of the Court of Military Appeals. An examination of these documents reveals that the petitioners' present contentions were presented to each of these bodies, from the trial court to the Court of Military Appeals. In each instance, they were rejected after careful consideration.

■ The power of civil courts to review judgments of courts-martial is rather strictly limited. In Burns v. Wilson, 1953, 346 U.S. 137, 142, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508, Chief Justice Vinson stated:

"In military habeas corpus cases, even more than in state habeas corpus cases, it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings—of the fair determinations of the military tribunals after all military remedies have been exhausted. Congress has provided that these determinations are 'final' and 'binding' upon all courts. We have held before that this does not displace the civil courts' jurisdiction over an application for habeas corpus from the military prisoner * * *. But these provisions do mean that when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence * * *."

■■ Thus, this court has no power to grant a trial *de novo* on these issues or to re-examine the evidence. Burns v. Wilson, supra, at page 146; see McKinney v. Warden, U. S. Penitentiary, 10 Cir., 1959, 273 F.2d 643. The documents filed by the respondent show that the military courts have fully and fairly considered all matters petitioners urge in support of their petition. No flagrant violation of constitutional rights has been shown.

Accordingly, the petition for habeas corpus should be and the same is hereby denied.

### Upon Further Consideration

Pursuant to the court's order on petitioners' motion to reconsider and to require service upon petitioners' counsel of record, petitioners have now filed their traverse to respondent's return and a reply to respondent's answer.

First, so as to set the record right, the court desires to dispel any erroneous impression, if there is such, in the mind of petitioners' counsel that the record before the court at the time of the court's order of September 19, 1960, denying the writs of habeas corpus, was not thoroughly gone into and considered. There seems to be an inference in counsel's last brief that the court perhaps did not read and review the transcript of the trial proceedings. This inference is drawn from counsel's reference to the court's conclusion in its entry of September 19, 1960 (p. 3 thereof), that the court "has no power to grant a trial *de novo* * * * or to re-examine the evidence." Perhaps the court in its entry should have said "weigh the evidence" instead of "re-examine the evidence." Be that as it is, the entire record before

the court at that time, including the transcript of the trial proceedings, was read and considered along with counsel's "Statement of the Case" and the legal argument contained therein.

Having fully considered the traverse to the respondent's return, and the reply to respondent's answer, together with the supplemental memorandum of law in support of the traverse, and having also gone back into the record again, the court reaffirms its order of September 19, 1960, denying the writs of habeas corpus.

■ Though petitioners have not abandoned any of the points relied on in support of their petition for the writs, counsel has now narrowed his argument to a single point, viz., that a document (Appellate Exhibit 3) promulgated by General Clarke, Commanding General of the Seventh Army in Europe, deprived petitioners of a fair trial because of command control.

Petitioners contend that the effect of the document was not considered by the review of the Staff Judge Advocate, nor by the Board of Review. Also, it is inferred that the Court of Military Appeals was in error when it said of this document, "It was not brought to the court's attention at trial * * *." (United States v. Carter, 9 U.S.C.M.A. 108 at p. 115, 25 C.M.R. 377, 384; p. 11, Resp. Exhibit D). Petitioners conclude that this question was not decided in the military courts, and that this court should consider it and conclude that petitioners did not have a full and fair trial, nor that they received full or fair consideration of their claims by the military appellate agencies.

It is true as petitioners' counsel points out, during voir dire examination reference was made to a statement of General Hodes, Commander-in-Chief, United States Army, Europe (Appellate Exhibit 1), and also to a document promulgated by General Clarke (Appellate Exhibit 3). It is the effect of the latter document as respects command control over the members of the court-martial that petitioners

now claim was not considered by the military appellate agencies, and which deprived them of a full and fair trial as guaranteed by the Constitution, Amend. 6.

During the voir dire examination of Colonel VanSickle, both documents were referred to and were the basis of voir dire questions. On the basis of his answers with respect to the documents, Colonel VanSickle was challenged for cause, however, the other members of the court denied the challenge. It is noted that Colonel VanSickle later was peremptorily challenged and did not serve on the court.

Appellate Exhibit 1 was a statement made by General Hodes on July 23, 1956, and promulgated within the command of the convening authority. The statement was made fourteen days *after* the gang rape took place. General Hodes' remarks were presented at an Ambassador-Army Commanders Conference at which the subject of discussion was the deteriorating German-American community relationship because of an upsurge in robbery, murder and rape by American military personnel against citizens of the host country, Germany. Though reference was made to the incident involving the offense for which petitioners were later tried, it was mentioned only as an example of what one such crime against a member of the German citizenry could do to destroy all that had been done in the nature of good deeds, on the part of military personnel, to bring about a good community relationship. Other such incidents were mentioned by the General in his remarks. It was in preface to the foregoing observation that he said, "I think it is a very sad commentary on us, as commanders, when the reputation of the United States Army—as a matter of fact, when the reputation of the United States—is permitted to be jeopardized by a few 'bums.' "

As to the other document, Appellate Exhibit 3, it was a document apparently issued by General Clarke on June 1, 1956 and promulgated approximately five weeks *before* the offense in question was

committed. It was a general directive, including positive ways of improving relations with the Germans, and improving military discipline. It was to apply to all military personnel. Paragraph 1(c) thereof read: "Officers and NCOs must set the example by avoiding participation in incidents. *Any violations must be severely dealt with*. They must take action promptly to step in when the stage is being set for trouble." The emphasized sentence is assailed by the petitioners.

Contrary to petitioners' assertions, it appears that the effect of General Clarke's statement (Appellate Exhibit 3) was considered by the Staff Judge Advocate. On p. 16 of his opinion (Resp. Exhibit B) he sets out paragraph 1(c) verbatim. On p. 17 he refers to "Appellate Exhibits" in the plural, and on p. 18, he concludes that the efforts of superior commanders to maintain discipline is not command control. The fact that he discussed Appellate Exhibit 1 in detail, and not Appellate Exhibit 3, implies that the question with respect to Appellate Exhibit 1 may have been considered to be closer and more serious. At least there is more of a basis for this implication than there is for the assertion that Appellate Exhibit 3 was not at all considered.

The opinion of the Board of Review (Resp. Exhibit C) fails to mention specifically the General Clarke statement (Appellate Exhibit 3), but the Board specifically dealt with General Hodes' statement (Appellate Exhibit 1). Both statements pertained to the subject of better military discipline and thus better community relationship. The Board's opinion gave full consideration to petitioners' claim of prejudgment and command influence in connection with General Hodes' statement. Since this statement was issued following the offense, and was issued by the Commander-in-Chief of the Army in Europe, it is reasonable to assume that it was pressed more vigorously on appeal, and that the Board too considered it to present a more serious question on the issue of "pre-

judgment" and "command influence." Here again, from a review of the trial and appellate proceedings, this court can conclude only that in so far as the issue of the trial court's denial of the change of venue was concerned, each military appellate agency had before it each of the four appellate exhibits relied on by the defense in the motion for change of venue. (See Review of Staff Judge Advocate, p. 15, for a succinct description of the four appellate exhibits; Resp. Exhibit B.) Their mere failure to mention specifically General Clarke's statement (Appellate Exhibit 3) does not necessarily mean that the Board of Review did not consider it in passing on the issue of "prejudgment" and "command influence." It is to be presumed that the Board of Review considered the whole record in passing on these issues.

Whether the Court of Military Appeals erred in stating that the Clarke document (Appellate Exhibit 3) "was not brought to the court's attention at trial," is a matter of interpretation. It certainly was referred to in the voir dire of Colonel VanSickle. However, the statement of General Hodes was actually submitted to the court during voir dire (see p. 6, Resp. Exhibit C). It does not appear that the Clarke statement (Appellate Exhibit 3) was so submitted. Perhaps this is the distinction Judge Latimer was drawing. The court went on to say the following about General Clarke's document: (p. 12 of the original opinion, Resp. Exhibit C)—"It was published to govern conduct of all military personnel, and it set out a variety of ways in which to better local conditions and improve military discipline. Its language was couched well within permissible limits, and we find nothing improper about its promulgation."

Even if the court had been in error in stating that General Clarke's statement was not brought to the court's attention at trial, this probably would not have changed the result. Speaking of General Hodes' comments, on p. 8 of the opinion (Resp. Exhibit C, p. 8), the court stated that even if they had not been

given to the court at trial, " \* \* \* we would presume that it had been read or discussed by every member of the court-martial in accordance with the attached distribution directive." The same reasoning could well have been applied to the General Clarke document (Appellate Exhibit 3).

Petitioners rely on United States v. McCormick, 27 E.T.O. 339 (1945), a decision by a Board of Review upsetting a conviction of rape because of command control. In that case a news bulletin signed by the convening authority three days after the offense was committed was read to the court by defense counsel. The bulletin referred specifically to rape, and stated that anyone convicted of the offense would be hanged—"Offenders will get the limit." The Board of Review held that this was undue influence, as setting a minimum sentence. The publication " \* \* \* so far oversteps the limits of propriety as to constitute coercions."

As to petitioners' claim with reference to General Clarke's statement, the McCormick case is distinguishable from the case at bar on several grounds:

(1) In McCormick the document was published shortly *after* the offense. Here the General Clarke document was dated over a month prior to the offense.

(2) In McCormick the bulletin dealt only with rape and its punishment. Here the document was general and included positive suggestions to better local community relations, as well as the general statement about dealing with violators for the various offenses which might be committed.

(3) The document in McCormick specified a specific minimum penalty, i. e., hanging. Here the document merely stated in general terms that violators must be severely dealt with.

In conclusion, this court finds that the effect of the General Clarke document (Appellate Exhibit 3) was considered by the military courts and found to be "well within permissible limits." The fact that the Court of Military Appeals *may* have been mistaken as to whether this document was brought to the court's attention at trial has little weight, especially in view of its earlier statement that it would presume the members of the court had read or discussed documents according to the distribution directives. The merits of petitioners' claims have been fully and fairly considered by the military appellate agencies. It is not for this court to grant the writs of habeas corpus simply to weigh or "reevaluate the evidence." Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 1049, 97 L. Ed. 1508.