Raymond L. KASEY, Appellant,

v.

E. R. GOODWYN, Jr., Warden, Federal Reformatory, Petersburg, Virginia, Appellee.

No. 8338.

United States Court of Appeals Fourth Circuit.

Argued April 19, 1961.

Decided May 27, 1961.

Alfred Avins, Chicago, Ill., for appellant.

James C. Waller, Major, JAGC, Office of The Judge Advocate General, Dept. of the Army, Washington, D. C. (Joseph S. Bambacus, U. S. Atty., Cary L. Branch, Asst. U. S. Atty., Richmond, Va., and Thomas A. Ryan, Lieutenant Colonel, JAGC, Office of The Judge Advocate General, Dept. of the Army, Washington, D. C., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

This appeal is taken from an order of the District Court whereby the petition of Raymond L. Kasey, formerly a soldier in the United States Army, for a writ of habeas corpus was dismissed. Kasey was confined in the Federal Reformatory at Petersburg, Virginia, under a sentence of imprisonment for fifteen years after conviction by an army court-martial of the crime of rape upon a German girl. By order of the District Judge he was permitted to file a petition in forma pauperis to which the custodian of the reformatory in an answer set out the proceedings of the court-martial and the army tribunals in review. Upon this record a hearing was had in the District Court in which it was contended that the prisoner was entitled to be released because he had not been accorded a fair trial and due process of law in the court-martial trial, in that the members of the court had been subjected to the hostile and inflammatory reaction of the German newspapers and the German populace to the crime and that they had also been improperly influenced by the superior military authorities in command. The District Court denied these contentions and dismissed the writ.

The petitioner Kasey and six other Negro soldiers in the United States Army in Germany were tried by a court-martial upon the charge of rape of a fifteen-year old German girl on the night of July 9, 1956, at Bamberg, Germany. The trial, at which the accused was represented by counsel, was held at Wurzberg, sixty miles distant from Bamberg, on eleven days between August 7 and August 24, 1956. All of the defendants were convicted. Four of them were sentenced to dishonorable discharge, forfeiture of all pay and allowances, and imprisonment for life; three of them including Kasey received like sentences except that the imprisonment imposed was fixed at forty years. In subsequent proceedings the Board of Review reduced the life sentences to thirty years imprisonment and the lesser sentences to fifteen years imprisonment.

After the trial by court-martial, the evidence, including the confessions of guilt by all of the defendants, was exhaustively reviewed and the legal issues involved were examined by the Staff Judge Advocate General under Article 60 of the Uniform Code of Military Justice, 10 U.S.C.A. § 860, and the convictions and sentences were approved by the convening authority. Thereafter the record was again reviewed by the Board of Review in the Office of The Judge Advocate General as required by Article 66 of the Uniform Code of Military Justice, 10 U.S.C.A. § 866. In this review Kasey was represented by two qualified military lawyers designated by the Judge Advocate General and two privately employed attorneys. The Board examined the evidence and considered the errors of law assigned, including the contentions now raised by the petitioner, and affirmed the findings and sentences with the modification set out above. Thereafter permission was given to appeal to the United States Court of Military Appeals with respect to the questions involved in the pending appeal and after hearing, including arguments and written briefs on behalf of the defendants, the court affirmed the decision of the Board of Review.

The contention that the members of the court-martial were improperly influenced in their determination is based upon certain incidents which occurred before and after the commission of the crime, including indignant and denunciatory articles with respect to the crime in the local German newspapers, angry expressions of opinion by members of the German populace, protests by top level and local German officials, and statements given out by general officers of the United States Army of which the members of the army court-martial had notice. The reactions to the crime in the community are fairly described in the following excerpt from the opinion of the United States Court of Military Appeals:

"* * * The offenses stirred up a storm of public protest in the city of Bamberg, Germany, where the

incident occurred. Editorials and articles, appearing in the local press, voiced the indignation of the outraged host populace toward this country's occupying troops. The incident was depicted as one of many such bestialities by American soldiers which had made the city's public places unsafe for the citizenry. Comparisons were made to the bygone sentiments of odium and fear of the people for the claimed barbarianism of Russian troops during that nation's military occupation of Bamberg following the Second World War. According to newspaper reports, the incident touched off a series of extraordinary countermeasures by the city's officialdom, including the passage of a resolution by the City Council demanding the removal of American troops. Accounts were given to civil officials seeking and receiving the assurances of American military commanders that steps would be taken to improve community relationships and that discipline would be stiffened to the end that civilians would no longer be the victims of such acts of violence. The last of the German newspaper articles on the subject, of which the law officer was apprised, appeared two weeks after the first publication. An American language newspaper, which was circulated locally, reported that scores of 'poison pen letters' had been received by our military leaders in the wake of the incident."

Especial emphasis was placed by the defendants in the proceedings before the army tribunals in review, and is renewed in the pending appeal in this court, on a statement issued by General Bruce C. Clarke, Commanding General, United States Seventh Army, on June 1, 1956, before the commission of the crime, and upon a statement by General Henry J. Hodes, Commander-in-Chief, United States Army in Europe, on July 23, 1956, after the commission of the crime and the arrest of the defendants. In the first statement, General Clarke took notice of the publicity given to incidents of improper and criminal conduct on the part of the American soldiery in Germany and directed that any violations by members of the Armed Forces of the United States should be severely dealt with. In the second statement, General Hodes commented on the difficulty of preserving good relations between the army and the German people, referred to several previous directives aimed at the prevention of misconduct by the troops, criticised his subordinate officers for failing to heed his orders, and referred specifically to four recent crimes of violence, including the rape of the girl in this case, as incidents which had occasioned such unfavorable publicity as to offset numerous efforts on the part of the army to build up good-will in Germany.

Counsel for the defendants moved the convening authority before the court convened to change the place of trial because of the unfavorable publicity and the statements of the general officers above referred to. This motion was denied. A similar motion was made some weeks later when the court-martial convened and the public agitation had somewhat abated. In connection with the motion defendants' counsel engaged in an extensive voir dire examination of the members of the court in order to challenge their fitness to serve on the tribunal. In answer to questions propounded by the law officer of the court the members answered under oath that they had formed no opinions from the publicity given to the case or from the directives of the general officers which would render them incapable of making impartial findings or of imposing impartial sentences in the event that the defendants were found guilty. The motion for a change of venue was then denied and the case proceeded to trial.

In reviewing this action of the court-martial the Board of Review held that the expression of outraged public opinion was a natural reaction to the commission of a heinous crime but that it

was directed against the recurrence of crime and was not of the type likely to prevent a fair trial in this instance; and that there was no showing that the members of the court were adversely affected thereby. With respect to the statement of General Hodes, which was brought to the attention of the officers generally by order of General Clarke, the Board pointed out that it was directed to all officers in the army and not specifically to the members of the court and that in view of the answers of the members of the court on voir dire it was reasonable to conclude that it did not prejudice them in making a determination of the case.

The United States Court of Military Appeals also carefully and exhaustively reviewed the evidence of unfavorable publicity and the statements of the Commanding Generals in considering the question whether there was error in denying the motion for change of venue. The court was convinced that there was more than substantial evidence to support the conclusion that the unfavorable publicity did not influence the members of the court and did not require a change of venue. The court was also of the opinion that the statements of the general did not indicate a prejudgment of the case or an attempt to influence the verdict of the court-martial. It was pointed out that the remarks of General Hodes were made at a conference of senior officers at which German-American relations were under discussion and were intended to stimulate a tighter supervision of the American forces by their officers, and were obviously made without personal knowledge of the facts of the particular case now under consideration and without reference to the guilt or innocence of the accused.

The court also held that the statement of General Clarke a month before the commission of the crime was properly promulgated to the army as a directive to officers to set an example to the troops by avoiding unseemly conduct which would impair German-American relations. In the course of its opinion the court said that the General's directive was not brought to the attention of the court-martial at the trial. The correctness of this allegation is now challenged by counsel for the petitioner in this court. The fact is that the directive was not formally introduced in evidence as was the statement of General Hodes, which was delivered to the court at its request in the course of the voir dire proceedings. General Clarke's statement, however, although not formally handed to the court, was brought to their attention in the cross-examination of a member of the court on voir dire who was subsequently peremptorily challenged and did not serve during the trial. It is not unreasonable to assume that General Clarke's statement did come in regular course to the attention of members of the court prior to the trial; but it had no relation to the particular case and, in view of the answers of members of the court on voir dire, the final determination of the army courts in review that it had no improper effect upon the members of the court was supported by the evidence.

■ It is well settled that there is a denial of due process of law when a judgment of death or imprisonment by a civil court is based on a finding of guilt produced by public clamor or mob violence and that in such case the judgment may be reviewed on petition for habeas corpus even though it has been affirmed by the Supreme Court of the state in which the case was tried. Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; United States ex rel. Darcy v. Handy, 3 Cir., 224 F.2d 504; Geagan v. Gavin, D.C. Mass., 181 F.Supp. 466.

Moreover, there is no doubt that the judgment of a military court is invalid if it has been improperly influenced by command authority. Article 37 of the Uniform Code of Military Justice, 10 U.S.C.A. § 837, provides:

"No authority convening a general, special, or summary court-martial, nor any other commanding

officer, may censure, reprimand, or admonish the court or any member, law officer, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercise of its or his functions in the conduct of the proceeding. No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts."

This statement has been given effect by the United States Court of Military Appeals. See the opinion of the court in the pending case, 9 USCMA 108, 25 CMR 370, and the decisions cited therein.

The Government contends in the pending appeal that since the contentions of the appellant were fully and fairly considered by the military courts they may not now be used as a basis for the issuance of the writ of habeas corpus. Reliance is placed on the general rule that habeas corpus is available only when want of jurisdiction in the sentencing court is shown and, more particularly, on the pronouncements set forth in the opinion of the four justices in Burns v. Wilson, 346 U.S. 137, 73 S. Ct. 1045, 97 L.Ed. 1508, to the effect that Congress has provided an elaborate system for the review of the judgments of military courts and that the scope of review on habeas corpus of the judgments of the military courts is more narrow than in civil cases. On the other hand, the appellant asserts that the scope of review in military habeas corpus cases is not narrower than in civilian habeas corpus cases. In this respect see Mr. Justice Frankfurter in Burns v. Wilson, 346 U.S. 148, 73 S.Ct. 1052, 97 L.Ed. 1508; 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363; Fischer v. Ruffner, 5 Cir., 277 F.2d 756; Wiener on Courts-Martial and The Bill of Rights, 72 Harvard L.R. 1, 266.

We need not decide this question, however, for even if it be held that the judgments of the military courts like those of the civil courts are reviewable on petition for habeas corpus when questions of due process and constitutional rights are involved, we are satisfied that in this case there was no error in the judgment of the courts-martial and that it was properly affirmed by the military courts on review.

Affirmed.