548 A.2d 157

**Maria Bruehwiler BREWSTER**

v.

**MARYLAND SECURITIES COMMISSIONER.**

**No. 102, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Oct. 6, 1988.

Donald T. Trinen (Christa D. Taylor and Hart & Trinen, Denver, Colo., Jeffrey S. Rosen and Rosen & De Martino, Washington, D.C., on the brief), for appellant.

Sarah McCafferty, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and MOYLAN and ROBERT M. BELL, JJ.

GILBERT, Chief Judge.

Is the phrase "dishonest and unethical practices" that is embodied in Md.Ann.Code, Corps. and Ass'ns Article § 11–412(a)(7) vague, indefinite, ambiguous and uncertain? Does it violate the Due Process Clause of the Fifth and Fourteenth Amendments, bearing in mind that there is no litmus paper test nor "table of weights and measures for ascertaining what constitutes due process"[1] of law? That is the principal issue put to us by Maria Bruewiler Brewster, a securities salesperson whose license was suspended for thirty days by the Maryland Securities Commissioner. Additionally, the Commissioner imposed a $100 fine on Brewster. The Circuit Court for Baltimore City (Friedman, J.) affirmed, and this appeal ensued.

## The Facts

We set forth the facts in order to understand why the Commissioner imposed sanctions on Brewster and, concomitantly, why Judge Friedman affirmed the Commissioner.

The genesis of this case was a telephone call from Brewster to Douglas Lang. Brewster solicited Lang's purchase of CXR Telecom stock (CXR). The record shows that, while advocating CXR to Lang, Brewster failed to indicate "any specific or detailed information ... about the particular risk factors associated with CXR."[2] The record further clearly demonstrates that, because of Lang's then relatively minuscule financial net worth, Brewster induced him to inflate

---

1. Justice Felix Frankfurter in *Burns v. Wilson*, 346 U.S. 137, 149, 73 S.Ct. 1045, 1052, 97 L.Ed. 1508 (1953).

2. Hearing officer's findings of fact, which are undisputed.

five fold his net worth in order to facilitate the approval of the trade by Stuart–James, Brewster's employer.

From the record we also learn that after Lang agreed to purchase $1500 worth of CXR stock Brewster mailed him a prospectus which spelled out the high risk factors involved. Lang obviously had a change of mind and sought to cancel the transaction. Brewster informed Lang that the verbal contract was binding and that, if Lang reneged, Brewster's employer would sue Lang for the money. Apparently alarmed by that information, Lang contacted the Office of the Attorney General, who intervened in the matter. The sale was cancelled.

The Securities Commissioner subsequently served on Brewster an "Order to Show Cause" why Brewster should not be fined and her registration as an agent suspended for a period of ninety days.

Brewster was charged by the Commissioner with

"recommending to customers the purchase of a low-priced speculative stock that is clearly unsuitable for them in view of their financial position, and encouraging a customer to falsify the amount of his net worth in order to complete such a sale [both of which] are dishonest and unethical practices prohibited by § 11–412(a)(7) of the Maryland Securities Act, ... and also violat[ive of] § 2 of the Rules of Fair Practice of the National Association of Securities Dealers, Inc."

The matter was referred to a Hearing Officer, Mark A. Sargent,[3] who, after a hearing, concluded that the manner in which Brewster sold the stock to Lang made the transaction "wholly unsuitable." Sargent found that Brewster's conduct amounted to "dishonest and unethical practices" within the meaning of the Maryland Securities Act, Corps. & Ass'ns Art., § 11–412(a)(7). Those findings led Sargent to recommend that Brewster's registration be suspended

---

**3.** Sargent is a professor at the University of Baltimore School of Law where, among other subjects, he teaches Securities Regulations.

for thirty days and that she be fined $100. The recommendations were adopted by the Commissioner. Brewster then appealed to the circuit court, which, as we have observed, affirmed. In this Court no factual findings by the Hearing Officer or trial court are in dispute.

### The Issues

I. Was Brewster denied due process of law because Md.Ann.Code, Corps. & Ass'ns Art. § 11–412(a)(7) is violative of the Constitution?

II. Has the State violated Brewster's First Amendment commercial free speech rights?

### I.

### The Constitutionality of the Statute

The lack of dispute as to the fact findings of the Hearing Officer, Mark Sargent, are important to a resolution of this matter. It is now beyond question but that Brewster read the Compliance Manual of her employer, Stuart–James. That manual states that

"implicit in all member and registered representative relationships with customers and others is the fundamental responsibility for fair dealing. Sales efforts must therefore be undertaken only on the basis that can be judged as being within the ethical standards of the association's rules, with particular emphasis on the requirement to deal fairly with the public.... [S]ales efforts must be judged on the basis of whether they can be reasonably said to represent fair treatment for the person to whom the sales efforts are directed, rather than on the argument that they result in profits to customers."

The Compliance Manual twice reprinted Article III, § 2 of the National Association of Securities Dealers (NASD) Rules of Fair Practice. Section 2 of Article III of those rules provides:

"In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is

suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs."

Section 15 of the Securities Exchange Act of 1934, codified as 15 U.S.C.A § 780(b)(7)(C) as amended by Act of June 4, 1975, Publ.L. No. 94–29, 89 Stat. 149, provides for the creation and promulgation of NASD rules. Those standards embody the ethical guidelines for the securities industry. *Lange v. H. Hentz & Co.*, 418 F.Supp. 1376, 1383 (N.D.Tex.1976). The commentary to Art. III, Rule 2 declares:

"Some practices that have resulted in disciplinary action and that clearly violate this responsibility for fair dealing are set forth below, as a guide to members:

*Recommending Speculative Low–Price Securities*

1. Recommending speculative low-priced securities to customers without knowledge of or attempt to obtain information concerning the customers' other securities holdings, their financial situation ... this has particular application to high pressure telephonic sales campaigns.

*Recommending Purchases Beyond Customer Capability*

5. Recommending the purchase of securities ... in amounts which are inconsistent with the reasonable expectation that the customer has the financial ability to meet such a commitment."

*See* NASD ¶ 2152.[4]

Brewster, at the time of registration with the Maryland Division of Securities, was registered with NASD. Hence, she knew or should have known of the NASD rules, having passed a test concerning those rules.

---

**4.** The NASD was not created by the Congress or the SEC. It was developed in close association with the SEC and approved by the latter on August 7, 1939. Employees of NASD firms are required to pass a comprehensive examination which demonstrates the individual's knowledge of securities as well as the NASD rules and regulations.

Admittedly, the Maryland Securities Act does not explicitly define "dishonest and unethical practices." The Act, § 11–412(a)(7), provides in pertinent part:

"The Commissioner by order may deny, suspend, or revoke any registration if he finds that the order is in the public interest and that the applicant or registrant . . . :
(7) Has engaged in dishonest or unethical practices."

■ The absence from the Maryland Act of a definition of the phrase "dishonest and unethical practices" does not, as Brewster suggests, preclude punishment for her conduct. Section 11–412(a)(7) does not stand as an independent, isolated proviso, free and clear of all other provisions of the securities law. Indeed, § 11–412(a)(7) must be read together with COMAR 02.02.02.02B. That rule exempts from written examination those agents who are registered with NASD. Hence, it is clear that the Maryland Securities Commissioner knew that Brewster was familiar with and had passed a comprehensive examination on the NASD rules and regulations. Those rules included Article III, § 2, as above quoted.

■ The Hearing Officer found that Brewster did not inform Lang "of the specific risks noted in the prospectus," and that the stock would not have been purchased had those risks been disclosed. We think it patent that Brewster's sale to Lang of the highly speculative and risky securities, together with her suggestion that Lang misrepresent his net worth, violated Md.Ann.Code, Corps. & Ass'ns Article § 11–412(a)(7).

■ The Supreme Court sixty-two years ago declared in *Connally v. General Constr. Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926), that a penal statute must "be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *See also Bowers v. State*, 283 Md. 115, 120, 389 A.2d 341 (1981). Nevertheless, a broad statutory standard is not vague if it has a meaningful referent in business practice, custom, or usage. *United States v. National*

*Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).

■ The term "dishonest and unethical" has a meaningful referent in business practice and usage. It is found in both NASD Art. III, § 2 and Stuart–James's Compliance Manual. Brewster either knew or should have known that the particular sale to Lang and the deception she had him practice with respect to his net worth were proscribed conduct.

In *Erdos v. S.E.C.*, 742 F.2d 507, 508 (9th Cir.1984), the Court noted that when applying the NASD rule prohibiting unsuitable recommendations the pivotal question is whether the dealer made "only such recommendations as would be consistent with the customer's financial situation and needs," quoting *Phillipps & Co.*, 37 S.E.C. 66, 70 (1956). *See also Harold R. Fennocchio*, 3 Fed.Sec.L.Rep. (CCH) § 25,797.25 (1976). The latter cases held that Art. III, § 2 was violated when a broker failed to make serious inquiry into the suitability of customer's investments.

Affording further clarification of the words in question is found in *Webster's Third New International Dictionary of the English Language Unabridged* (1976). That tome defines the adjectives as follows:

"dishonest—characterized by lack of truth, honesty, probity, or trustworthiness or by an inclination to mislead, lie, cheat, or defraud.

unethical—not conforming to approved standards of behavior, a socially accepted code, or professionally endorsed principles and practices."

Within the stock brokerage business, unethical and dishonest conduct is clearly defined by the NASD Manual. Since Brewster passed the comprehensive examination on the NASD manual, she was expected to be aware of the norms of her industry. Additionally, the Stuart–James Compliance Manual, administrative and judicial decisions, and Webster's dictionary provided her with further guidance.

■ We hold that Md.Ann.Code, Corps. & Ass'ns Article § 11–412(a)(7) is not constitutionally infirm. It is not ambiguous, indefinite, uncertain, or vague. Rather, the statute is clear and concise and proscribes definite areas of conduct. As we see it, Brewster knew that what she did was dishonest and unethical. She knew it was improper to fail to advise Lang of the inherent risks in investing in highly speculative stock. She further knew that encouraging Lang to falsify his net worth, in order for her to conclude a transaction, was equally improper, irresponsible, misleading, and dishonest. Judge Friedman did not err in upholding the Commissioner's findings.

## II.

### Commercial Free Speech

■ Md.Ann.Code, Corps. & Ass'ns Article § 11–412(a)(7) restricts commercial speech, that which is directed solely to the economic interest of the speaker and his or her listeners. Justice Powell in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 561–62, 100 S.Ct. 2343, 2348–49, 65 L.Ed.2d 341 (1980), wrote:

"Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information."

The nature of the protection afforded by the constitution to the utterer of the speech depends upon the expression and the governmental interest invoked. *Id.* 447 U.S. at 563, 100 S.Ct. at 2350. The State, *Central Hudson* holds, "may ban forms of communication [that are] more likely to deceive the public than to inform it." *Id.*

The Court articulated a four prong analysis for applying the First Amendment to challenged communications. Those four prongs are:

1. The commercial speech "must concern lawful activity and not be misleading."

2. "[T]he asserted governmental interest" must be "substantial."

If the analysis of 1 and 2 *both* yield positive responses, then the Court considers:

3. "Whether the regulation directly advances" the State's asserted interest.

4. Is the regulation more extensive than is necessary to serve the interest asserted.

The first prong of the analysis makes clear that to fall within the ambit of the First Amendment's protective umbrella the speech may be neither misleading nor directed toward unlawful activity. In the matter *sub judice*, Brewster's statements to Lang with respect to the purchase of CXR stock and the inherent risk factors involved were, at least, misleading. Therefore, her statements are not protected by the First Amendment's free speech proviso. Since the statements in question do not satisfy *Central Hudson's* first prong, there is no need for us to consider whether the other three tines are sated.

There was no violation of Brewster's First Amendment rights.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.