**Richard J. SISSON, Plaintiff,**

**v.**

**The UNITED STATES of America, the Secretary of Defense, and the Secretary of the Air Force, Defendants.**

**No. CIV 85–0509 TUC ACM.**

United States District Court,
D. Arizona,
Tucson Division.

March 18, 1986.

Scott L. Taylor, Tucson, Ariz., for plaintiff.

James D. Whitney, Asst. U.S. Atty., Tucson, Ariz., Alexander S. Nicholas, Major, U.S.A.F., General Litigation Div., Office of the Judge Advocate Gen., Washington, D.C., for defendants.

## ORDER

MARQUEZ, District Judge.

This case is before the court on cross motions for summary judgment. The court has examined the pleadings in this matter and the record of the military special court-martial proceeding herein.[1] There are no disputed questions of material fact. Summary judgment is therefore appropriate.

Plaintiff is a Master Sergeant in the United States Air Force stationed at the Davis-Monthan Air Force Base in Tucson, Arizona. He was charged with nine separate violations of military regulations. As to some of these charges, Sgt. Sisson was offered non-judicial disposition. The remaining charges were referred to court-martial proceedings. Sgt. Sisson exercised his right to have all the charges presented to the court-martial tribunal, Article 15, Uniform Code of Military Justice [hereinafter U.C.M.J.], 10 U.S.C. § 815.

Following a trial on the charges before court members,[2] the Plaintiff was convicted of four violations. The punishment was determined by the members to be a reprimand and the forfeiture of one half pay for four months, totaling $2,800.00. The sentence was approved by the convening authority pursuant to Article 64, U.C.M.J., 10 U.S.C. § 864. The conviction and sentence were affirmed following review in the office of the Judge Advocate General, Article 69, U.C.M.J., 10 U.S.C. § 869. This action was then filed.

Prior to the court martial proceedings, Plaintiff had sought injunctive relief from this court in an effort to preclude the enforcement of the military regulations. This court denied that relief and that decision was affirmed on appeal based on the failure to exhaust military remedies, *Sisson v. United States,* 736 F.2d 1275 (9th Cir.1984). Plaintiff has presented his claims at every level in the military to which he is entitled. The exhaustion requirement is therefore satisfied.

This action presents a constitutional challenge to the regulations under which Sgt. Sisson was court-martialled. The undisputed facts are as follows:

Plaintiff supplemented his military income by selling products as a distributor for Amway. The charges resulting in the court-martial are related to that activity. Staff Sergeant Warren Kirby met Sgt. Sisson in January, 1982. They carried on several conversations about investments. Near the end of January or early February, 1982, Sisson invited Sgt. Kirby to his house for a presentation of the income producing activities that he was involved in. That meeting was attended by other military and civilian persons. At that meeting Sgt. Sisson informed the group about Amway. Sgt. Kirby was interested in dealing with Amway because he had previously been involved with the organization. As a dis-

---

1. With regard to the transcripts of the military proceedings, the court notes that a full record was not submitted. It appears that only the answers to the questions are transcribed from the court martial trial. This makes the court's review of this matter more difficult. The reason for this practice is not clear, particularly when a full transcript is provided of pre-trial motions and from the record it appears that a full tape recording of the trial was made and at one point, was played to the court members. The problem is compounded by the fact that there appears to be some paraphrasing of the testimony and all objections and arguments are paraphrased.

2. Court members are superior ranking officers acting in a capacity similar to a jury.

tributor he would be entitled to a discount on his own personal use of the products and had the opportunity to obtain a profit from selling the products. Sgt. Kirby remained at Sgt. Sisson's house after the others left and after further discussions about Amway, Sgt. Kirby agreed to become a distributor with Sgt. Sisson acting as his sponsor. The record indicates that the sponsor will receive a profit from sales made by his distributors.

The record indicates that Sgt. Kirby was initially hesitant to have Sgt. Sisson act as his sponsor. This was based on the fact that Sgt. Sisson was his reporting supervisor in the military. Sgt. Sisson assured him that this would not affect the work in the military and Sgt. Kirby joined Amway.

In April, 1982, Sgt. Sisson met with Tech. Sgt. Joseph E. Barber, Jr. and his wife to discuss Amway. Sisson and Sgt. Barber had previously had casual discussions about taxes and other investments to supplement their military income. Although Sgt. Barber had been invited to attend a group meeting, he had been unable to attend. Sgt. Barber had Sgt. Sisson discuss Amway at the Barber house. A week after this presentation, the Barbers entered into a distributorship agreement with Amway. Sgt. Sisson was to act as their sponsor. At the initial presentation, Sgt. Sisson did not ask the Barbers to join Amway. Sgt. Sisson was the military instructor for Sgt. Barber.

Sgt. Sisson also had discussions with Staff Sgt. Thomas Weir after Weir was stationed at the Tucson base in June, 1982. The conversations pertained to off duty activities to generate extra income. Some time after these conversations, Sgt. Sisson drove Sgt. Weir and his wife to an Amway meeting at another person's house. This meeting was also a group presentation. After the meeting, Sgt. Weir and his wife invited Sisson into their apartment for coffee and further discussions about Amway. Two days later, the Weirs entered into a distributorship agreement with Amway naming Sisson as the sponsor. The meeting to sign the paper work was requested by Sgt. Weir. The record indicates that Sgt. Weir only participated in Amway to the extent of personal use of the products.

Based on these facts, Sgt. Sisson was charged and convicted of three counts of violating Air Force Regulation 30–30, ¶ 3(d).[3] He was also charged and convicted of one count of violating Air Force Regulation 30–30, TAC Supplement 1, ¶ 9(g) which requires Air Force personnel to notify their immediate supervisor and obtain permission from "the appropriate authority" prior to engaging in "off duty employment or any other outside activity for compensation." In this action Plaintiff alleges seven separate constitutional violations to his court martial.

## JURISDICTION

The first issue to be decided by the court is whether or not this court has jurisdiction and under what statute. Plaintiff cites 28 U.S.C. § 1331. Defendant contends that the amendments to 10 U.S.C. § 1552 preclude this court from exercising jurisdiction under section 1331.

Section 1552 grants the Secretaries of the various military departments the power to change military records "when he considers it necessary to correct an error or

---

3. Regulation 30–30 ¶ 3(d) states:
   Commercial Soliciting by Air Force Personnel.
   To eliminate the appearance of coercion, intimidation, or pressure from rank, grade, or position, Air Force personnel (except special Government employees), are prohibited from making personal commercial solicitations or sales to DOD personnel who are junior in rank or grade, at anytime, on or off duty.
   (1) This limitation includes, but is not limited to, soliciting and selling insurance, stocks, mutual funds, real estate, and any other commodities, goods, or services.
   (2) This prohibition does not apply to the one-time sale by an individual of personal property or a privately owned dwelling. Neither does it apply to employing off-duty DOD personnel in retail stores or other situations that do not include solicited sales.
   (3) For civilian personnel, the limitation applies only to personnel under their supervision at any level.

remove an injustice." 10 U.S.C. § 1552(a). Civil Courts had found jurisdiction under section 1331 to compel the Secretary to exercise this power under certain circumstances, *Sanders v. United States,* 594 F.2d 804 (Ct.Cl.1979). In 1983, Congress added a provision to section 1552 precluding the Secretary from exercising that power in court-martial matters, 10 U.S.C. § 1552(f).

The only case cited by the Defendants indicating a lack of jurisdiction under section 1331 based on this amendment is the unpublished opinion of *Stokes v. Orr,* 628 F.Supp. 1085 (D.Kan.1985). That opinion dismissed a suit under 28 U.S.C. § 1331 against the Secretary of the Air Force. It is apparent that the claim for relief in that action was an order compelling the Secretary to correct the military record of the Plaintiff regarding his court-martial. The opinion does not support the Defendants' contention that the 1983 amendments were intended to preclude the exercise of jurisdiction under section 1331.

There are several other cases where the courts have exercised jurisdiction under 28 U.S.C. § 1331 where the suit did not depend upon a claim to correct the military records, *see, Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975) [Injunctive relief from constitutional violations] and *Homcy v. Resor,* 455 F.2d 1345 (D.C.Cir.1971) [Declaratory relief sought to hold court-martial invalid]. Although these cases were collateral attacks on military court-martials, they sought judicial intervention other than for the correction of military records. The complaint in this action does not seek an order directing the Secretary of the Air Force to correct Sgt. Sisson's record. It seeks only an order by this court declaring the court-martial here invalid and an order requiring a return of the forfeited pay. The amendments to 10 U.S.C. § 1552 do not apply to this case. This court therefore has jurisdiction under 28 U.S.C. § 1331 unless some other provision specifically precludes jurisdiction under that section.

The amendments to the statutes in 1983 did not alter the provision of Article 76, U.C.M.J., 10 U.S.C. § 876. That provision makes the final determination of the military courts binding on all courts including civil courts. In *Councilman,* the Supreme Court held that constitutional claims could be presented to the Civil Courts notwithstanding Article 76. The challenges here are based on constitutional rights and entail a direct challenge to the military regulations enforced against Sgt. Sisson. This court has jurisdiction under 28 U.S.C. § 1331.

This court also has jurisdiction under the Tucker Act, 28 U.S.C. § 1346. The Plaintiff is seeking a return of his forfeited pay totaling $2,800.00. This is an appropriate claim to present to the District Court under the Tucker Act, *Stone v. United States,* 683 F.2d 449 (D.C.Cir.1982).

## STANDARD OF REVIEW

Defendants contend that this court's standard of review is limited to solely a determination of whether or not the military courts gave fair consideration to the issues presented, regardless of the outcome, citing, *Burns v. Wilson,* 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); and *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). This is based primarily on the Defendants' claim that *Councilman* requires a uniform standard of review without considering whether the claim is presented under habeas corpus, 28 U.S.C. § 2241, or the Tucker Act, 28 U.S.C. § 1346, for back pay, *Schlesinger v. Councilman,* 420 U.S. at 748, 95 S.Ct. at 1308, 43 L.Ed.2d at 603.

The Defendants' analysis of this issue is far too narrow. To accept such an argument would preclude the federal courts, at all levels, from reviewing any military proceedings. This is clearly not the intention of the Supreme Court holdings or of Congress. The only uniform requirement found in all the cases and stated in *Councilman,* is that this court must defer to the

military court's authority and deny relief in a collateral attack on a court-martial conviction "unless it [appears] that the judgments [of the court-martial] were void." *Id.* This does not establish one standard of review for all issues. It merely requires this court to refrain from interference with military matters unless the court-martial is constitutionally void. Accordingly, this court will not upset the convictions in this case unless it is established that they are void.

Plaintiff's contention of the level of review to be exercised by this court is that possessed by any appellate court including the Court of Military Appeals, *Culver v. Secretary of the Air Force,* 559 F.2d 622 (D.C.Cir.1977). This is based on Plaintiff's claim that no court of appeals has considered his constitutional claims.

From the statutes cited to the court, it appears that Plaintiff's only avenue of appeal following the conviction and approval by the convening authority, was to present his claims to the Office of the Judge Advocate General, Article 69, U.C.M.J., 10 U.S.C. § 869. From there he could only reach the Court of Military Review by the Judge Advocate General granting a discretionary appeal. The Plaintiff requested this type of review but the discretionary referral was denied by the Judge Advocate General.[4]

This argument is persuasive as to why this court should exercise jurisdiction in this matter. The court, however, must pay great deference to the policies of the military.

## CONSTITUTIONAL CHALLENGES

■ Plaintiff's initial challenge is an attack on Air Force Regulation 30–30 ¶ 3(d).

He contends that the regulation is unconstitutionally vague and overbroad and cites numerous cases involving vagueness and overbreadth challenges to statutes. These cases, however, do not involve military regulations.

The standard of review required for a vagueness challenge in cases involving military regulations is "the standard which applies to criminal statutes regulating economic affairs." *Parker v. Levy,* 417 U.S. 733, 756–57, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439, 458 (1974). This standard requires a less restrictive analysis than for civilian penal statutes. As the Supreme Court stated:

The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language. Indeed, we have consistently sought an interpretation which supports the constitutionality of legislation.

Void for vagueness simply means that criminal responsibility should not attach where one could not understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged.

*Id.* quoting, *United States v. National Dairy Products Corp.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963) (citations omitted).

The issue then is whether the Plaintiff had reasonable notice that the conduct engaged in was prohibited. From the instruc-

---

**4.** Plaintiff was not entitled to appeal to the Court of Military Review directly because the jurisdiction of that court is limited to cases where the sentence affects a general or flag officer, extends to death, dismissal, dishonorable or bad conduct discharge, or confinement of one year or more. Article 66, U.C.M.J., 10 U.S.C. § 866. Access to the Court of Military Appeals can only be obtained following a review on the merits by the Court of Military Review,

Article 67, U.C.M.J., 10 U.S.C. § 867(b). The only method of obtaining review in the United States Supreme Court is by a petition for writ of certiorari from a decision on the merits by the Court of Military Appeals, 10 U.S.C. § 867(h). Therefore, since the Plaintiff was not entitled to present his claims to the Court of Military Review, by statute, he contends that he has not had appellate review.

tions given to the court members,[5] it appears that the conduct which is prohibited is only the one-to-one solicitation of the junior ranked personnel by the senior ranked personnel. Group solicitations are not covered by the regulation.[6] Also not covered under the regulation are transactions and solicitations initiated by the junior ranked persons.

The facts, as set forth above, establish that Sisson invited Sergeant Kirby to a group presentation of Amway. At that presentation, other persons, including civilians were present. As the military court instructed, there was no violation from these facts. The only possible instance of a violation of this regulation was when the remainder of the group left Sisson's house and Sgt. Kirby stayed for further discussions. Following this one-to-one discussion, the distributorship agreement was signed. The court-martial record indicates, however, that the discussions that occurred at this point in time were just a continuation of the group presentation. Since it appears that the only difference between the two discussions is that others were present, it must be concluded that had other persons been present at that moment, no charge would have been filed.

Why there is an exception from this regulation for group presentations is not clear to the court.[7] Presentations to a group of junior ranked personnel by a senior official would be much more coercive than the one-to-one situation. However, the military has decided not to extend coverage under the regulation to the group presentation.

The regulation does not provide such notice to Sgt. Sisson that he would be aware that continuing a discussion with an individual who chose to remain after the group presentation suddenly becomes a violation of the regulation. This is far too subtle a restriction in light of the facts of this case in which the content of the communication to the group and to the individual did not substantially change.

The facts surrounding the charges for the solicitation of Sergeant Barber are also clear in the court-martial record. The discussions of Amway occurred at the Barber's house. Mrs. Barber was present during the entire presentation. The record does not indicate that Mrs. Barber was a member of the Air Force. Had she been in

---

5. The military judge instructed the members as follows:

> I'm going to give you some definitions applicable to your deliberative process.
>
> A personal commercial solicitation is the asking or enticing of others by or on behalf of an individual person to engage in any business-related activity.
>
> It should be understood that no rule or prohibition is always necessarily applicable to a particular sales-related business. Each situation must be looked at and a determination made as to prohibited commercial solicitation and sales on the basis of the precise factual circumstances of the case.
>
> The proscriptions of AFR 30-30 apply to specific acts of individuals, and not to the mere structuring of sales-related businesses.
>
> Air Force senior members may not, as to junior Air Force members, personally solicit sales or commercial participation involving the procurement of sales by the junior member from the senior member.
>
> Every sales-related business briefing, distributorship meeting, sales presentation, explanation, or success story by a senior member, particularly to a group and not on a one-to-one basis, is not necessarily a prohibit-

ed commercial solicitation, even where junior members are in attendance.

> It is not simply recurring sales that may involve senior and junior members that are prohibited. It is the personal solicitation and/or sale by the senior to the junior that is barred. A sale or recurring sale-related business relationship initiated by the junior is not proscribed.

Defendant's Exhibit A, page 96.

6. The court notes a serious inconsistency between the instructions to the court members (footnote 5, *supra*) and the opinion from the Office of the Judge Advocate General (Exhibit B, pages 5–6), which holds that Sgt. Sisson violated the regulation by the invitation of the junior ranked personnel to the group meetings. This further convinces the court that the regulation, as applied to this case, is unconstitutionally vague.

7. The court again notes that the Office of the Judge Advocate General made no such distinction, including the group presentation as part of the violation. The Regulation, as applied by the military judge, however, requires the *personal* one-to-one solicitation.

the military, Sisson would probably have been charged with another violation of the regulation. To accept the regulation as being validly applied to this set of facts, would require a distinction to be made between the presence of the junior ranked official's spouse and any other person. It would consider a solicitation to the military person to be considered a one-to-one situation despite the presence of the spouse.

The regulation makes no such distinction nor is there any other notification that this distinction is possible. It would be impossible for any person, including Sgt. Sisson, to be placed on notice of a violation of this regulation where more than one person was present during the discussion. Accordingly, Sgt. Sisson would have had no reasonable notice that he was in violation of the regulation.

The incident involving Sergeant Weir also fails to provide notice that the conduct violates the regulation. The record is clear that Sgt. Weir invited Sisson into his house after the group presentation. The purpose of the invitation was to obtain further information about Amway. Two days later, at Sgt. Weir's initiation, the distributorship agreement was entered. There is no indication at what point there may have been a solicitation *initiated* by Sisson other than the initial invitation to the group presentation. The court-martial record establishes that it was not this invitation that resulted in the charges being filed. The facts as presented in this case would not provide notice that there was a violation. Rather, they show the contrary, that there was no violation here because the transaction was initiated by Sgt. Weir following the group presentation.

The government appropriately points out that Sisson acted as the reporting official (he wrote evaluation reports) concerning Sergeant Kirby and that he was also the instructor for Sergeant Barber. The possibility for coercion is clear. It is this coercion that Regulation 30–30 is designed to prevent. The record, however, is devoid of any evidence of actual coercion. In fact, the record establishes that each of the military officials involved in this case entered into the Amway distributorships with one goal in mind, to make extra income. Although the Defendants argue that the profit motive of Sgt. Sisson is controlling, the profit motives of each of the junior ranked military personnel in this case cannot be ignored. The Defendants also point out that at one point, Sisson was warned not to engage in these activities. The warning, however, was directed toward the selling of Amway products *while on duty. Defendants Exhibit A,* pages 84–85. None of these transactions involved solicitations while on duty.

This is not a case where it is clear that the conduct charged falls within the provisions of the regulation. This regulation precludes only the conduct included in the military court's definition. Sergeant Sisson's conduct in these situations falls outside the scope of that definition. This is not a situation of the "marginal case" falling under the regulations. Here, there are two differing definitions of what type of conduct is prohibited by the regulation. The definition of the military court requires a one-to-one personal solicitation and the other, by the Judge Advocate General's Office, includes even group presentations where civilians are present. The broad expansive interpretation by the Judge Advocate General is not consistent with the express terms of the regulation which requires a "personal commercial solicitation." The adoption of such an interpretation would result in the regulation being impermissibly overbroad as it would encompass activities where the military has no interest in regulating under this particular regulation, the appearance of coercion.

Since the military courts have determined that Sisson's conduct falls under the prohibitions of the regulation, it must be concluded that the regulation failed to provide any reasonable notice that a violation would occur from that conduct. Some type of reasonable notice is required before the Constitution will allow criminal prosecution for such conduct. Regulation 30–30 failed to provide such a notification and accord-

ingly, as applied to this case, it is unconstitutionally vague.

The holding of this court should be limited to the facts in this case. The Regulation could validly be applied to other situations. This situation is unique, however. The instructions to the court members narrowed the application of the regulation to such a level that it excluded Sisson's conduct from its coverage. Sisson was therefore denied notice that his conduct would be considered punishable.

■ Plaintiff's second attack on the court-martial proceedings claims that Air Force Regulation 30–30, TAC Supplement 1, ¶ 9(g) is arbitrary, illegal and overbroad. That regulation precludes Air Force personnel from engaging in off duty activities for compensation without obtaining prior approval.

The illegality claim is based on the restriction of off duty activities, thereby interfering with private rights. Plaintiff contends, and the record establishes, that he has been involved in off duty Amway activities for several years prior to the imposition of this regulation.

The purpose of this regulation is to keep outside off-duty activities from interfering with the military. It is undisputed that the apparent discretion present in the regulation is restricted by the form required to be filed in order to comply with the regulation, TAC form 13. Contrary to Plaintiff's contention that this regulation is far too restrictive on off duty activities, the regulation seeks only approval prior to engaging in those activities so that the military will be aware of what activities are involved. This regulation does not intervene in matters where the military's interest is minimal or non-existent.

In the court's review of the record herein, a fundamental constitutional error is apparent. Although this claim was presented to the military authorities and was part of the brief for review by the Office of the Judge Advocate General,[8] the claim is not raised in either of the motions for summary judgment. Since the issue is of a fundamental constitutional nature, the court will consider it on the merits.

It is undisputed in this case that Sgt. Sisson has engaged in his Amway related off-duty activities for several years. Regulation 30–30, TAC Supplement 1, ¶ 9(g) was not enacted until January of 1980. The court has not been cited, nor can its own research find, a regulation in effect prior to 1980 requiring Air Force personnel to actively seek permission from their superiors before engaging in outside, off-duty activities. Sergeant Sisson's testimony at the court-martial is uncontradicted that the first time that he was aware of the existence of this regulation was when he was served with the charges of violating it. The evidence at trial on this matter was that a review was conducted of the military's file of TAC form 13's and no such form was found from Sgt. Sisson. There is nothing in the record to indicate that Sgt. Sisson "willfully" or "recklessly" violated the regulation. The regulation, as applied here, makes no such requirement of *mens rea.*

Although there is the long standing legal view that "everyone is presumed to know the law," the conviction in this case must fail. The court is mindful of the great deference that must be provided to military regulations concerning activities of military personnel. However, the basic fundamental fairness of the constitution must still apply to military activities, at least in a minimal sense, when criminal charges are made. The court is guided by Justice Rehnquist's majority opinion in *Parker v. Levy, supra,* where it states:

> Perhaps because of the broader sweep of the Uniform Code [of Military Justice], the military makes an effort to advise its personnel of the contents of the Uniform Code, rather than depending on the ancient doctrine that everyone is presumed

---

**8.** The opinions of the Office of the Judge Advocate General in this matter did not discuss this claim.

to know the law. Article 137 of the Uniform Code, 10 U.S.C. § 937, requires that the provisions of the Code be "carefully explained to each enlisted member at the time of his entrance on active duty, or within six days thereafter," and that they be "explained again after he has completed six months of active duty...." Thus the numerically largest component of the services, the enlisted personnel, who might be expected to be a good deal less familiar with the Uniform Code than commissioned officers, are required by its terms to receive instructions in its provisions. Article 137 further provides that a complete text of the Code and of the regulations prescribed by the President "shall be made available to any person on active duty, upon his request, for his personal examination." *Parker v. Levy,* 417 U.S. 733, 751–52, 94 S.Ct. 2547, 2559, 41 L.Ed.2d 439, 455 (1974).

As set forth above, the regulation involved herein was added as a new requirement to the Regulations. It was imposed in 1980, several years after Sergeant Sisson began engaging in off-duty Amway activities. The regulation does not preclude off-duty activities, it merely requires permission before engaging in them. It was Sgt. Sisson's mere failure to seek permission prior to continuing these activities that prompted this charge. There is no indication that the request would have been denied. It is evident then, that the military in enforcing the regulation here, chose to impose criminal sanctions for a technical violation of the regulation. The military's choice in doing so must be allocated the deference to which it is entitled.

That choice, however, must be made in light of the basic requirements of fundamental fairness imposed under the Constitutional requirement of due process. The facts of this case are almost identical to those of *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). In *Lambert,* the Supreme Court invalidated a city ordinance that punished a convicted felon for the failure to register with the city as a felon. The court held that the imposition of criminal punishment for the mere failure to act with regard to a matter that is unusual and where no notice is provided of the requirement violates the fundamental fairness concept of due process. The court struck down the ordinance because it lacked any kind of *mens rea* requirement. Also of concern to the court in *Lambert* was the fact that there was no opportunity provided for the felon to correct the violation, prior to being charged with the violation, after the felon was given specific notice of the requirement.

Subsequent case law has refined the holding of *Lambert, United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) [nature of grenades by itself would put a person on notice that regulation probably exists]; *United States v. International Mineral & Chemical Corp.,* 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971) [nature of hazardous chemicals being transported would provide notice to the shipper that some regulation of the activity exists]. *See, also, Texaco Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) [*Lambert* holding limited to criminal cases].

These refinements do not preclude the application of *Lambert* to this case. The military has developed a series of regulations so unique and out of the ordinary, in that they restrict activities that a civilian would not be precluded from engaging in, that the regulations themselves require specific notice of the contents of the regulations at least two separate times during the course of an enlistment. The enactment of Regulation 30–30, TAC Supplement 1, ¶ 9(g) was a substantial departure from then existing Air Force regulations. Personnel were not required to seek permission before engaging in off-duty income producing activities prior to the enactment of the regulation. The regulation imposes an affirmative duty on military personnel and punishes the mere failure to take action. What is punished by this regulation is not the engaging in off-duty activities, but the failure to seek permission first. The conduct regulated, off-duty employ-

ment and income producing activities, is not such an activity that would place a person on notice of probable regulation.

This case is also similar to *Lambert* in that the first knowledge that Sgt. Sisson had of the existence of the regulation was when he was notified of the charges for violating it. He was not presented with an opportunity to correct the violation. This is not a situation where once the person is notified of the misconduct, he continues to engage in it. Here the charge under which Sisson was convicted alleged only the failure to seek permission prior to engaging in off-duty activities that occurred before the initial presentation of the charges, not conduct occurring after he received notice of the regulation.

Even in light of the deference that this court must provide to military decisions and regulations, it must be concluded that the punishment of Sgt. Sisson for violating this regulation violates the basic requirement of fundamental fairness imposed by due process. The record is totally devoid of any evidence, either direct or circumstantial, that would indicate knowledge of the regulation by Sgt. Sisson, such as wide spread publicity, lectures, etc. That evidence would probably have been sufficient to sustain the conviction, *see, United States v. Mowat*, 582 F.2d 1194 (9th Cir. 1978). At the court-martial trial, the military relied solely on the presumption of knowledge of the law. Since Sgt. Sisson had been in the military for several years at the time the regulation was enacted, it cannot be presumed that Sgt. Sisson was advised of the existence of this regulation during the required review under Article 137 UCMJ, 10 U.S.C. § 937.[9]

The absence of a requirement of *mens rea* in this regulation and in this case, coupled with the fact that it is undisputed that Sergeant Sisson had no personal knowledge of the regulation, requires the conclusion that the prosecution of Sgt. Sisson in this case for failing to take affirma-

tive action to avoid violating the regulation, violates the fundamental fairness required under due process. Accordingly, his conviction on this charge cannot stand.

The resolution of these two issues results in the conclusion that the court-martial proceedings challenged herein are constitutionally void. Since this disposes of the case, the court need not and will not consider the remaining challenges. The Plaintiff is entitled to the relief that he seeks in this action.

IT IS ORDERED that the Defendants' motion for summary judgment is denied.

IT IS FURTHER ORDERED that the Plaintiff's cross motion for summary judgment is granted.

IT IS FURTHER ORDERED that the clerk of this court is directed to enter judgment declaring the court martial proceedings and the judgments of conviction entered July 15, 1983 and approved on September 13, 1983 of Master Sergeant Richard Sisson, 403–62–8413, to be in violation of the Constitution of the United States and are accordingly, void. The clerk is also directed to enter judgment on behalf of Sergeant Sisson and against the United States for the sum of $2,800.00.

---

**9.** It is doubtful that Sergeant Sisson has been given a review under Article 137 since the enact-

ment of the new regulation.