**Richard J. SISSON, Appellee,**

v.

**The UNITED STATES, Appellant.**

**Appeal No. 86–1485.**

United States Court of Appeals, Federal Circuit.

March 17, 1987.

---

Jonathan S. Baker, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellant. With him on brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Asst. Director. Major James M. Kinsella, Trial Atty. Gen. Litigation Div., Dept. of Air Force, of counsel.

Scott L. Taylor, Tucson, Ariz., argued for appellee.

Before MARKEY, Chief Judge, FRIEDMAN and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

Appellee, a Master Sergeant in the Air Force at Davis-Monthan Air Force Base, Arizona, was court-martialed and convicted on charges that (a) he had violated an Air Force regulation by making personal commercial solicitations of lower-ranking enlisted members and (b) he had violated a command directive by engaging in outside commercial activity for compensation without the approval of his immediate commanders. His sentence was a reprimand together with forfeiture of one-half of his pay for four months—amounting to $2,800. After unsuccessfully exhausting his military remedies, Sisson brought suit in the United States District Court for the District of Arizona. That court voided the court-martial and ordered repayment of the $2,800 forfeiture. *Sisson v. United States,* 630 F.Supp. 1026 (D.Ariz.1986). The Government appealed to this court.[1] We reverse.

## I.

The case revolves around violation of two Air Force directives. One is Air Force Regulation (AFR) 30–30, paragraph 3d, the pertinent part of which prescribes:

Command Soliciting by Air Force Personnel.

To eliminate the appearance of coercion, intimidation, or pressure from rank, grade, or position, Air Force personnel (except special Government employees), are prohibited from making personal commercial solicitations or sales to [Department of Defense] personnel who are junior in rank or grade, at anytime, on or off duty.

The other directive is Tactical Air Command Supplement (TAC Supplement) to AFR 30–30, *supra.* The relevant portion of the TAC Supplement states:

All Air Force military personnel must notify their immediate supervisor by submitting a TAC form 13, and get approval from the appropriate authority shown below before engaging in off-duty employment or any outside activity for compensation.

The undisputed facts at the court-martial—as paraphrased by the District Court (630 F.Supp. at 1027–28)—are as follows:

Plaintiff [appellee] supplemented his military income by selling products as a distributor for Amway [a direct sale enterprise]. The charges resulting in the court-martial are related to that activity. Staff Sergeant Warren Kirby met Sgt. Sisson in January, 1982. They carried on several conversations about investments. Near the end of January or early February, 1982, Sisson invited Sgt. Kirby to his house for a presentation of the income producing activities that he was involved in. That meeting was attended by other military and civilian persons. At that meeting Sgt. Sisson informed the group about Amway. Sgt. Kirby was interested in dealing with Amway because he had previously been involved with the organization. As a distributor he would be entitled to a discount on his own personal use of the products and had the opportunity to obtain a profit from selling the products. Sgt. Kirby remained

---

1. This court has jurisdiction under 28 U.S.C. § 1295(a)(2) because the District Court's juris- diction was based, at least in part, on 28 U.S.C. § 1346(a)(2) (the so-called little Tucker Act).

at Sgt. Sisson's house after the others left and after further discussions about Amway, Sgt. Kirby agreed to become a distributor with Sgt. Sisson acting as his sponsor. The record indicates that the sponsor will receive a profit from sales made by his distributors.

The record indicates that Sgt. Kirby was initially hesitant to have Sgt. Sisson act as his sponsor. This was based on the fact that Sgt. Sisson was his reporting supervisor in the military. Sgt. Sisson assured him that this would not affect the work in the military and Sgt. Kirby joined Amway.

In April, 1982, Sgt. Sisson met with Tech. Sgt. Joseph E. Barber, Jr. and his wife to discuss Amway. Sisson and Sgt. Barber had previously had casual discussions about taxes and other investments to supplement their military income. Although Sgt. Barber had been invited to attend a group meeting, he had been unable to attend. Sgt. Barber had Sgt. Sisson discuss Amway at the Barber house. A week after this presentation, the Barbers entered into a distributorship agreement with Amway. Sgt. Sisson was to act as their sponsor. At the initial presentation, Sgt. Sisson did not ask the Barbers to join Amway. Sgt. Sisson was the military instructor for Sgt. Barber.

Sgt. Sisson also had discussions with Staff Sgt. Thomas Weir after Weir was stationed at the Tucson base in June, 1982. The conversations pertained to off duty activities to generate extra income. Some time after these conversations, Sgt. Sisson drove Sgt. Weir and his wife to an Amway meeting at another person's house. This meeting was also a group presentation. After the meeting, Sgt. Weir and his wife invited Sisson into their apartment for coffee and further discussions about Amway. Two days later, the Weirs entered into a distributorship agreement with Amway naming Sisson as the sponsor. The meeting to sign the paper work was requested by Sgt. Weir. The record indicates that Sgt. Weir only participated in Amway to the extent of personal use of the products.

The District Court invalidated the court-martial conviction on the constitutional grounds that (1) appellee had no proper notice that the action for which he was convicted violated Air Force Regulation 30–30 which forbids "personal commercial solicitation," and (2) appellee had no proper notice of the TAC Supplement to AFR 30–30 (which was adopted after he became a member of the military and began to engage in outside commercial activity) and therefore cannot be validly held to have violated it.

## II.

Citing *Burns v. Wilson,* 346 U.S. 137, 144, 73 S.Ct. 1045, 1049–50, 97 L.Ed. 1508 (1953), the Government insists (as it did in the District Court) that the only role of the civil courts, in passing on a court-martial conviction, is simply to determine whether the military has given fair consideration to the arguments why the conviction was wrong. *Burns v. Wilson* dealt with reevaluation of evidentiary issues and mere problems of proof, but the Supreme Court has made it very clear that constitutional and fundamental questions, going to the validity of the court-martial, can properly be reviewed by civil courts. *Schlesinger v. Councilman,* 420 U.S. 738, 744–45, 95 S.Ct. 1300, 1306–07, 43 L.Ed.2d 591 (1975); *United States v. Augenblick,* 393 U.S. 348, 356, 89 S.Ct. 528, 533–34, 21 L.Ed.2d 537 (1969). *See Bowling v. United States,* 713 F.2d 1558, 1560–62 (Fed.Cir.1983). We proceed, therefore, to canvass the District Court's constitutional reasoning and decisions. Though we disagree with that court's conclusions, we cannot fault its undertaking the task.

## III.

■ The heart of the District Court's ruling that appellee's constitutional rights had been invaded with respect to Air Force Regulation 30–30 is that (a) Sisson did not have fair notice that that regulation prohibited group solicitations and (b) the evidence showed that each of the three solicitations with which appellee was charged involved a group solicitation. Both of those premises are flawed.

First, the regulation, on its face, can and does cover many types of group solicitations. "Personal commercial solicitations" —the language used in the regulation—is not restricted to one-on-one solicitations; it includes any solicitation which can be fairly characterized as "personal," and many group meetings fall into that category, especially if the group is small. The military judge, in instructing the court-martial members, did indicate that not every group meeting or discussion was covered by the regulation.[2] But the military judge never told the court-martial that all group solicitations are excluded, and he made it very clear that "Each situation must be looked at and a determination made as to prohibited commercial solicitation and sales on the basis of the precise factual circumstances of the case." To us, it is impossible to say that members of the Air Force could reasonably think that the regulation covered no more than strictly one-on-one solicitations, and never touched small group meetings (in private homes) such as Sgt. Sisson held with Sgts. Kirby, Barber, and Weir. Thus, even if the court-martial members considered the charged solicitations as each involving a group solicitation, the conviction was not invalid.

Second, on the basis of the evidence summarized in Part I, *supra*, the court-martial could permissibly find that appellee also made one-on-one solicitations to Kirby, Barber, and Weir. There is surely enough evidence to support that finding, and the instructions authorized it. We (as well as the Court of Claims) have decisively ruled that "this court will not reweigh the evidence presented at plaintiff's court-martial in order that it might substitute its judgment for that of the military trial court." *Bowling v. United States, supra,* 713 F.2d at 1561. *See also, Flute v. United States,* 535 F.2d 624, 626 (Ct.Cl.1976); *Artis v. United States,* 506 F.2d 1387, 1391 (Ct.Cl. 1974); *Taylor v. United States,* 199 Ct.Cl. 171 (1972).

There is nothing unfair in the application of the regulation to appellee's conduct. Sisson's actions, as shown by this record, are precisely the type of behavior the regulation was designed to prevent—situations in which the subordinate could well feel pressured by the superior's asking him to engage in a commercial transaction from which the superior would likely profit. This is a familiar kind of preventive hygiene often used in superior-subordinate, or comparable, relationships. *See, e.g.,* 5 C.F.R. (1–1–86 Ed.) § 735.202 (gifts, etc., in the federal civil service).

## IV.

The difficulty found by the District Court with the TAC Supplement, *supra* (requiring notification to, and approval by, higher authority before engaging in gainful outside activity) was that it was adopted in 1980, a considerable time after Sisson had begun engaging in his Amway activities, and there was no showing that he knew about the directive. This was held to be a violation of due process because of lack of notice to appellee. 630 F.Supp. at 1033–35. The Government urges that no sort of *mens rea* is necessary for violation of a general military directive of this character. We need not decide that issue here because we are satisfied that there was sufficient evidence for the court-martial to find that Sgt. Sisson should have known of this directive, whether or not he had actual knowledge.[3]

Military enlisted personnel differ from civilians in that the former are carefully instructed, at least twice, in the demands of the Uniform Code of Military Justice. *Parker v. Levy,* 417 U.S. 733, 751–52, 94 S.Ct. 2547, 2559–60, 41 L.Ed.2d 439 (1974). The importance of abiding by legal commands is repeatedly stressed. Off-duty commercial activity by military personnel has an obvious connection with the proper performance of military duty because the for-

---

**2.** One part of the instructions was.

Every sales-related business briefing, distributorship meeting, sales presentation, explanation, or success story by a senior member, particularly to a group and not on a one-to-one basis, is not *necessarily* a prohibited commercial solicitation, even where junior members are in attendance (emphasis added).

**3.** Sisson testified at the court-martial that he was not actually aware of the directive.

mer might well trench on the latter. Military personnel engaging in such off-duty activity can therefore be expected to be alert to any changes in regulations on the subject of off-duty commercial activity.[4] In addition, Sisson's commanding officer testified at the court-martial that briefings were conducted with respect to the TAC Supplement in 1982–1983, and the directive was "passed around in the form of a standards of conduct briefing which is done annually within the squadron. ... There is a monitoring requirement to make sure everybody sees it, and I know that the first sergeant personally conducted it." In the face of this general background and this specific evidence, the District Court could not substitute its own judgment that Sisson had no reason to know anything about the TAC Supplement. *See Bowling v. United States, supra,* and Part III, *supra.* On the contrary, the court-martial could rightly conclude that appellee, if he were properly on his guard, should have known about the Supplement's requirement.

For these reasons, the judgment of the District Court is

REVERSED.

---

**4.** The document of the Tactical Air Command promulgating the TAC Supplement now involved expressly declared that "violations of the specific prohibitions and requirements of the supplement by Air Force military personnel may result in prosecution under UCMJ [Uniform Code of Military Justice]."