# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3450

_____

Joseph D. Allen,                          *
                                          *
            Appellant,                    *
                                          *    Appeal from the United States
       v.                                 *    District Court for the
                                          *    District of North Dakota.
United States Air Force,                  *
                                          *          [PUBLISHED]
            Appellee.                     *


_____

Submitted: October 20, 2009
Filed: May 7, 2010

_____

Before RILEY, Chief Judge,[1] HANSEN, and GRUENDER, Circuit Judges.

_____

HANSEN, Circuit Judge.

Joseph Allen served in the United States Air Force (Air Force) for more than twenty years, from January 14, 1985, until September 30, 2006, when he voluntarily retired and received an Honorable Discharge. During his service, on February 18, 2004, the Air Force initiated general court-martial proceedings against Allen, alleging

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

that he took indecent liberties with a minor child and contributed to the delinquency of two minor children.  The general court-martial trial began more than two years later, on March 21, 2006.  Allen was convicted, and his sentence included a reduction in grade from Master Sergeant (E-7) to Senior Airman (E-4), significantly reducing his retirement benefits.  Following the conviction, Allen filed a complaint against the Air Force and nineteen individuals in the District Court for the District of North Dakota, claiming that his Sixth Amendment speedy trial rights were violated.  The district court[2] granted the Air Force's motion for summary judgment.  Allen appeals, and for the following reasons, we affirm.  Allen also moves to supplement the record, and we deny his motion.

I.

Title 10 of the United States Code §§ 801 to 946, entitled the Uniform Code of Military Justice (UCMJ), the Manual for Courts-Martial (MCM) and the Rules for Courts-Martial (R.C.M.), which are a part of the MCM, establish a military member's rights and the procedures for military prosecutions.  In court-martial proceedings, a charge is "preferred" when a charge sheet, DD Form 458, containing both the charge and its specification(s), is signed under oath before a commissioned officer by someone who states that he or she has personal knowledge of or has investigated the matter and that the charges are true to the best of his or her knowledge and belief.  See UCMJ Art. 30; R.C.M. 307(b).  After the formal charge is preferred, the accused is to be informed as soon as practicable, and the commander who receives the charges and who also has authority to dispose of them must "promptly determine what disposition will be made" of the charge.  R.C.M. 401(b).

---

[2]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

The MCM provides guidance to commanders to help them determine which level of command should dispose of the charges. See R.C.M. 306. Commanders are authorized to forward the charges to a superior authority for disposition in order to effect disposition at the lowest appropriate level. See R.C.M. 306(b); (c)(5). Courts-martial vary in their composition, in the presence or absence of a law-trained Military Judge, and in the severity of the punishment and penalties they may impose. The lowest court-martial is the single officer Summary Court-Martial; the next highest is the three member (minimum) panel of the Special Court-Martial (which may or may not have a Military Judge detailed to assist it); and at the highest level, the General Court-Martial is composed of a Military Judge and a minimum of five other members. In cases in which the death penalty may be imposed, the General Court-Martial consists of a Military Judge and twelve panel members. At both the Special Court-Martial and General Court-Martial levels an accused, after consulting with his defense counsel and knowing the identity of the Military Judge, may request orally on the record to be tried by the Military Judge alone, subject to the Military Judge's approval. See UCMJ, Art. 16.

If the general court-martial convening authority (a very senior commanding officer usually of general officer or flag officer rank) decides to proceed with a general court-martial, there must be "a thorough and impartial investigation of all the matters set forth" in the charge and specifications, R.C.M. 405, by a commissioned officer who holds a hearing pursuant to Article 32 of the UCMJ. Unlike a civilian grand jury investigation, the accused may be present, represented by counsel, present evidence, and cross-examine witnesses. The Article 32 investigating officer makes and files a report of the investigation and makes a recommendation with respect to whether the charge should be dismissed or tried, and if tried, by which specie of court-martial. The general court-martial convening authority then must again decide whether to dismiss the charge and specification(s), or if prosecution is warranted, to refer the charge and specification(s) to a court-martial within the convening authority's jurisdiction. If the convening authority refers the charge and specification(s) for a trial

by a general court-martial, he or she convenes the court-martial by the issuance of another order that may refer the case for trial to an already existing general court-martial panel, or to a panel appointed specially to hear the case. At the court-martial, the charge and specification(s) are read, and the accused enters a plea. Following the arraignment and the disposition by the Military Judge of any pretrial motions, the trial commences before the Military Judge and the court-martial panel, i.e., the military jury. If the accused is convicted and sentenced either to death, to a bad conduct or dishonorable discharge, or to confinement for a year or more, he or she receives an automatic appeal to that member's service's Court of Criminal Appeals. See UCMJ, Art. 66(b). Otherwise, review of the proceedings of a general court-martial is a matter for the respective service's Judge Advocate General (TJAG), unless such a review is waived. See UCMJ, Art. 69.

Preferral of the charge and its accompanying specification(s) triggers the speedy trial clocks of both the Sixth Amendment and R.C.M. 707(a)(1), which states that, "[t]he accused shall be brought to trial within 120 days after . . . [p]referral of charges." The 120-day limitation provided by R.C.M. 707(a)(1) is subject to time exclusions. See R.C.M. 707(c) (stating that "[a]ll . . . pretrial delays approved by a military judge or the convening authority shall be . . . excluded" from the 120-day clock).

Following allegations that Allen took indecent liberties with the minor child W.P. and wrongfully and willfully contributed to the delinquency of two minors, W.P. and J.G., on or about June 7 or 8, 2003, the Air Force Office of Special Investigations investigated, and Allen was informed of the charge and specifications after they were preferred against him on February 18, 2004. A hearing was held pursuant to Article 32, at the conclusion of which the investigating officer recommended that the charge and specifications be referred for trial to a general court-martial. On April 27, 2004, the commander of the Eighteenth Air Force, at Scott Air Force Base, Illinois, who was the general court-martial convening authority, referred the case to a general court-

martial for trial. Chief Circuit Military Judge Colonel Mary Boone assigned Major Barbara Shestko as the Military Judge and set a trial date for July 19, 2004. She also entered a written order excluding the time from June 1, 2004, to July 19, 2004, for speedy trial purposes but did not explain why.

On June 30, 2004, Allen voluntarily released his two law-trained military defense counsel, and on July 9, 2004, his new military counsel filed a request for a delay until September 7, 2004. The request was granted, the trial date was reset for September 8, 2004, and the time from June 1, 2004, to September 8, 2004, was excluded for speedy trial purposes by Chief Judge Boone. During this continuance, one of the alleged victims, W.P., ran away and could not be located. Because W.P. would not be available to testify at the court-martial scheduled to take place on September 8, Lieutenant General William Welser III, the commander of the Eighteenth Air Force and the general court-martial convening authority, directed that the charge and its specifications be "withdrawn and dismissed without prejudice" in a written memorandum dated August 27, 2004. (App. at 65.) On that same date, Lieutenant Colonel Scott Bradshaw acting for the commander as the Chief of the Military Justice Section of the convening authority's Staff Judge Advocate's office, lined through Box 14 of the charge sheet, which had referred the charge for trial by general court-martial, with the signed notation "withdrawn without prejudice." (App. at 67.) The notation made no mention that the charge and specifications had been dismissed.

The Rules for Courts-Martial provide that the government may elect either to withdraw the charge and specifications under R.C.M. 604 or to dismiss the charge and specifications under R.C.M. 401(c). If the charge and specifications are withdrawn, they are merely suspended, and the speedy trial clock continues to run. If the charge and specifications are dismissed, they are extinguished, and the speedy trial clock stops. If the government wishes to renew the prosecution after the charges are dismissed, "[t]he charges must be re-preferred, investigated, and referred in

accordance with the Rules for Courts-Martial, as though there were no previous charges or proceedings." United States v. Britton, 26 M.J. 24, 26 (C.M.A. 1988). There is no R.C.M. provision for a joint withdrawal and dismissal of charges without prejudice.

On November 8, 2004, the Air Force was notified that the victim, W.P., had returned and was now available to testify. On November 24, 2004, the case was forwarded for action, and on December 2, 2004, the charge and specifications were re-referred to a general court-martial. Allen was served with a copy of the charge and specifications and the new referral.

In a memorandum dated December 29, 2004, Chief Judge Boone set a trial date of February 23, 2005, and excluded the time from December 17, 2004, to February 23, 2005, for speedy trial purposes. Just before the court-martial was set to start, Allen again fired his military counsel and was provided with two new law-trained military defense counsel. On March 7, 2005, Chief Judge Boone reset the trial for May 10, 2005, and excluded the time from February 24, 2005, to May 10, 2005, for speedy trial purposes. On May 3, 2005, Allen released one of his military counsel and hired civilian counsel. At a conference between the Military Judge and counsel on May 5, 2005, Allen's civilian counsel informed the court that he would not be available for trial until after Labor Day. At an arraignment hearing on May 9, 2005, the military court granted Allen's motion for a continuance, and the court rescheduled the court-martial for August 22, 2005, and excluded the time from February 23, 2005, until August 22, 2005, for speedy trial purposes based on the unavailability of Allen's civilian counsel.

On August 23, 2005, at a hearing held outside of the military jury's presence, the Military Judge addressed the convening authority's memorandum dated August 27, 2004, in which the charge and specifications were "withdrawn and dismissed." At that hearing, the government argued that the charge and specifications had been

"withdrawn." After hearing argument and offering the parties the opportunity to present evidence, the Military Judge stated that "based upon the evidence . . . before this court at this time, the convening [authority] dismissed [the] case in August of 2004." (Trial Rec. at 1094.) The Military Judge declined to rule on Allen's pending motion to dismiss for violation of his speedy trial rights because the court "[did] not have jurisdiction." (Trial Rec. at 1095.)

On August 31, 2005, the charge and specifications were re-preferred. After another series of delays, on March 16, 2006, Allen filed a motion to dismiss based on violations of Allen's speedy trial or due process rights. The Military Judge newly assigned to the trial denied the motion. At an Article 39 hearing on March 21, 2006, Allen's counsel agreed that the time between the re-preferral of the charges on August 31, 2005, until March 21, 2006, the date of trial, did not violate any of Allen's speedy trial rights.

The general court-martial was held March 21 to March 23, 2006, and Allen was found guilty of the charge and its specifications. Allen was reprimanded, reduced from E-7 to E-4 (reducing both his pay and his retirement benefits), required to forfeit $100 pay per month for one year, ordered to perform hard labor without confinement for three months, and restricted to the Air Force Base for two months.

Following his conviction, Allen requested that the court-martial's findings and sentence be set aside and that the charge and specifications be dismissed because the military judge should have granted Allen's motion to dismiss for violation of his speedy trial or due process rights. In a memorandum, the Director of the Air Force Judiciary, Colonel Roberta Moro, acting pursuant to Article 69 of the UCMJ, reviewed the record of the court-martial, determined that no relief was warranted and declined to send the case to the Air Force Court of Criminal Appeals because the court-martial's findings and sentence were supported by law. On September 30, 2006, Allen voluntarily retired from the Air Force and received an Honorable Discharge.

In January 2007, Allen filed a complaint in the District Court for the District of North Dakota seeking review of the court-martial proceedings. The district court held that the military court had given full and fair consideration to the question of whether the charge and specifications had been withdrawn or dismissed on August 27, 2004, and that the Air Force did not violate Allen's right to a speedy trial under either R.C.M. 707 or the Sixth Amendment, and the district court granted the Air Force's motion for summary judgment. Allen appeals, arguing that the charge and specifications were withdrawn and not dismissed and that the court-martial delay violated his speedy trial rights.

After Allen filed his appeal, he filed a motion to supplement the record with the Air Force's response to Allen's motion to dismiss dated August 20, 2005, which he asserts confirmed that the charge was withdrawn on August 27, 2004.

II.

A.

First, we must review our own jurisdiction to review Allen's collateral challenge to the court-martial proceedings. "Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." Burns v. Wilson, 346 U.S. 137, 140 (1953) (plurality). The Constitution gives Congress the power to "make Rules for the Government and Regulation of the land and naval Forces," U.S. Const. Art. I, § 8, cl. 14. The Supreme Court is the only Article III court vested by Congress with authority to directly review a military court's judgment by a grant of certiorari pursuant to Article 67a of the UCMJ. Thus, our ability to review military court proceedings is similar to our ability to review state court proceedings.

Nonetheless, while military courts exist separate and apart from the Article III courts, "[t]he military courts . . . have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights." Burns, 346 U.S. at 142. Although we do not have the authority to directly review court-martial proceedings, we do have jurisdiction over habeas petitions filed by military prisoners and collateral challenges to court-martial proceedings. See id. at 139 (explaining that federal civil courts have jurisdiction over military prisoners who have filed habeas corpus applications claiming the proceedings under which they were convicted "denied them basic rights guaranteed by the Constitution"); Schlesinger v. Councilman, 420 U.S. 738, 746-48 (1975) (acknowledging jurisdiction over collateral attacks of court-martial judgments). As Allen was not in custody at the time he filed his complaint, we do not review this case as a habeas challenge under 28 U.S.C. § 2241. See 28 U.S.C. § 2241(c) (giving federal courts the power to grant writs of habeas corpus for prisoners in federal custody). Nevertheless, we do have jurisdiction to review Allen's collateral challenge under 28 U.S.C. § 1331. See 28 U.S.C. § 1331 (giving federal courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States"); see also Councilman, 420 U.S. at 748-53 (explaining that Congress did not intend for collateral attacks on court-martial proceedings to be limited to challenges under § 2241). Therefore, we conclude that we have jurisdiction to review Allen's collateral constitutional challenge to the court-martial proceedings.

## B.

While it is clear that § 1331 provides us with subject matter jurisdiction to review Allen's challenge to the court-martial proceedings, our standard of review is somewhat less clear. See, e.g., United States ex rel. New v. Rumsfeld, 448 F.3d 403, 406 (D.C. Cir. 2006) (describing the standard of review over a collateral attack on court-martial proceedings under § 1331 as "tangled"), cert. denied, 550 U.S. 903 (2007). In Councilman, the Supreme Court differentiated between a direct and a

collateral attack on a court-martial judgment, explaining that "grounds of impeachment cognizable in habeas proceedings may not be sufficient to warrant other forms of collateral relief" and noted that without "a clear statement of congressional intent one way or the other, the question of whether a court-martial judgment properly may be deemed void . . . may turn on the nature of the alleged defect, and the gravity of the harm from which relief is sought" and "both factors must be assessed in light of the *deference that should be accorded the judgments of the carefully designed military justice system established by Congress*." Councilman, 420 U.S. at 753 (emphasis added). According to the Councilman Court, "implicit in the [congressional creation of the military justice system] is the view that the military court system generally is adequate to and responsibly will perform its assigned task." Id. at 758. Collateral relief was only possible if the judgments were void, and to be void the alleged defect must be "fundamental." Id. at 747.

Prior to Councilman, in evaluating a habeas petition in Burns, the Supreme Court stated that civil courts had the "limited function" of determining whether the military courts gave "fair consideration" to the petitioners' claims. Burns, 346 U.S. at 144. "[W]hen a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." Burns, 346 U.S. at 142.

In Rumsfeld, the Court of Appeals for the District of Columbia Circuit noted the uncertainty in applying different levels of deference to state court habeas petitions, military habeas petitions, and non-habeas petitions. Rumsfeld, 448 F.3d at 406-08. The Rumsfeld court concluded that except for when the standard is "quite specific," it had "serious doubt whether the judicial mind is really capable of applying the sort of fine gradations in deference" that may be implicated by the various scenarios. Id. at 408. The court therefore determined that it need only "repeat Councilman's statement that errors must be fundamental to void a court-martial judgment on collateral review. And in light of Councilman's point that non-habeas review is if

anything more deferential than habeas review of military judgments, a military court's judgment clearly will not suffer such a defect if it satisfies <u>Burns</u>'s 'fair consideration' test." <u>Id.</u> (internal citation omitted).

We agree with the D.C. Circuit's approach to the review of a non-habeas collateral attack on a court-martial judgment. Thus, our role in this review is to determine whether the military courts fully and fairly considered Allen's claims; it is not our duty to stand in the stead of the military courts "to reexamine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for" relief. <u>See</u> <u>Burns</u>, 346 U.S. at 144. Instead, it is "the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims." <u>Id.</u>

C.

First, Allen challenges the determination by Military Judge Shestko that the charge and specifications were "dismissed" rather than "withdrawn" when she interpreted the convening authority's memorandum dated August 27, 2004, directing that the charge and specifications were to be "withdrawn and dismissed without prejudice." (App. at 65.) We reject Allen's argument because the military court fully and fairly considered this issue. Although it initially said that because the convening authority had dismissed the charges it did not have authority to rule on Allen's motion to dismiss because of a claimed speedy trial violation, it then granted a continuance, heard argument on the issue, and allowed counsel the opportunity to submit evidence to determine whether the charge and specifications had been dismissed or withdrawn. Eight days later, apparently relying on the Military Judge's ruling, the charge and its specifications were re-preferred, and the prosecution began anew.

In support of his argument that the charge and specifications were withdrawn, Allen points to the prosecution's actions after August 27, 2004, and prior to the

Military Judge's ruling on August 23, 2005: the prosecution argued before the military court that the charge and specifications had been withdrawn, not dismissed; on December 2, 2004, based on the recommendation of a Staff Judge Advocate the charge was re-referred, which is impermissible if the charge has been dismissed; and Allen continued to be subject to administrative personnel action holds, which would have been lifted if the charge and specifications had been dismissed. He also points to Lieutenant Colonel Bradshaw's actions on August 27, 2004, when he drew a line through the referral block on the charge sheet and wrote that it was withdrawn without prejudice, without mentioning dismissal.

However, this all occurred before the Military Judge determined on August 23, 2005, that the charge and specifications had been dismissed. The Tenth Circuit has held that "where an issue is adequately briefed and argued before the military courts the issue has been given fair consideration, even if the military court disposes of the issue summarily." Roberts v. Callahan, 321 F.3d 994, 997 (10th Cir.), cert. denied, 540 U.S. 973 (2003). The parties fully addressed the issue before the military judge, and the military judge had the opportunity to consider and discuss the issue. Her consideration of the issue cannot be described as summary, or as short-shrifted. Accordingly, we conclude that the military court fully and fairly considered the issue, and consequently we lack authority to review the merits of the military judge's decision that the charges preferred on February 18, 2004, were dismissed by the general court-martial convening authority on August 27, 2004.

D.

Next, Allen argues that the district court erred in holding that the military court fully and fairly considered his speedy trial claim and that there was no fundamental error. We again reject Allen's claim because, in fact, the military court did fully and fairly consider his speedy trial claim. The military court received written motions on the issue, reviewed evidence submitted by the parties, heard oral argument from both

parties, asked questions of the parties to clarify the facts, and allowed the parties an opportunity to respond. When announcing its ruling, the military court explained why Allen's speedy trial rights were not violated, employing the balancing test from Barker v. Wingo, 407 U.S. 514 (1972),[3] in discussing Allen's Sixth Amendment claim.

As discussed above, the Tenth Circuit has held that "where an issue is adequately briefed and argued before the military courts the issue has been given fair consideration, even if the military court disposes of the issue summarily." Roberts, 321 F.3d at 997. Here, not only were the issues briefed and argued, the military court provided sufficient explanation as to why it concluded that Allen's speedy trial rights were not violated. The military court fully and fairly considered Allen's claim, and therefore, we will not review the merits of his claim. See, e.g., id. ("Petitioner's grounds . . . have been fully and fairly reviewed by the military courts. We are therefore unable to review them.").

Allen argues that the military court's ruling did not conform to Supreme Court standards because it did not thoroughly analyze the Barker factors and because it only considered his speedy trial claim after the second preferral of the charge and specifications on August 31, 2005. As discussed above, even a summary disposal of the issues is sufficient to demonstrate that the issue was fully and fairly considered when it was adequately briefed and argued before the military courts, as it was here. See id. Even if the military court had not reasonably explained why it reached the conclusion it did, it still fully and fairly considered the issue.

Moreover, even if the military court should have considered the entire time from the first preferral of charge and specifications on February 18, 2004, to March

_____

[3]Barker contains a four-factor balancing test in determining whether a defendant's Sixth Amendment speedy trial rights were violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. Barker, 407 U.S. at 530.

-13-

21, 2006, the date the court-martial began, Allen's speedy trial rights still were not violated under the Barker balancing test, even though the delay of more than two years was lengthy. See, e.g., United States v. Summage, 575 F.3d 864, 876 (8th Cir. 2009) ("[T]wo years is indeed a lengthy delay."), cert. denied, 139 S. Ct. 1161 (2010).

However, Allen himself was responsible for much of the delay because he repeatedly fired counsel and requested additional delays to accommodate his new counsels' schedules and to allow them to prepare for the court-martial. See id. ("The trial was continued several times at [defendant's] request so that he could obtain new counsel."). Even on the day of the court-martial Allen requested a continuance so he could hire civilian counsel. Moreover, Allen did not demand a speedy trial until a year and a half after the first preferral of charge and specifications. Finally, Allen claims that he suffered prejudice because he lived under a cloud of anxiety during the delay and lost the testimony of a potential alibi witness. "[A]nxiety and concern are present in every case, [but] this alone does not demonstrate prejudice." United States v. McGhee, 532 F.3d 733, 740 (8th Cir. 2008). The potential alibi witness, his mother-in-law, died on July 25, 2004. Had Allen not dismissed his defense counsel on June 30, 2004, the court-martial would have proceeded as scheduled, since this was before the minor witness, W.P., had disappeared and before the charge and specifications were "withdrawn and dismissed." Therefore, his mother-in-law's death did not prejudice him under a Barker analysis. Cf. Summage, 575 F.3d at 875 (explaining, under a Speedy Trial Act analysis, that the death of a potential alibi witness within the Speedy Trial Act time limit did not prejudice the defendant). He indeed was placed on an administrative hold, which is a notice to personnel authorities that no administrative or personnel actions should be taken with respect to him during the criminal investigation without prior coordination. See United States v. Orback, 21 M.J. 610, 612 (A.F.C.M.R. 1985). However, throughout the entire pre-judgment process he was not incarcerated and was able to continue performing his normal duties. Thus, under Barker, Allen was not prejudiced by the delay. Accordingly, even if Allen is correct that the military court should have included the entire period from

the first preferral of charge and specifications in February 2004, to the court-martial in March 2006, in its speedy trial analysis, Allen still would not be entitled to relief under the Sixth Amendment for violation of his speedy trial rights.[4]

E.

Finally, Allen has filed a motion to supplement the record on appeal with the Air Force's August 20, 2005, response to Allen's motion to dismiss. In his motion, Allen asserts that the Air Force's August 20, 2005, response confirms that the charge was withdrawn on August 27, 2004, and that the prosecution intended to seek a retroactive exclusion of 83 days to avoid a violation of Allen's speedy trial rights. However, the information Allen wants admitted into the record—that at the August 2005 hearing the prosecution argued that the charges were withdrawn rather than dismissed by the convening authority's August 27, 2004, action—is already included in the record through the transcript of that hearing. In fact, that issue was mentioned earlier in this opinion. See ante at 11.

Moreover, we have explained that "'[g]enerally, an appellate court cannot consider evidence that was not contained in the record below.'" United States v.

---

[4]We do not consider any argument that Allen is entitled to relief under R.C.M. 707(a)(1), which provides that "[t]he accused shall be brought to trial within 120 days after . . . [p]referral of charges." Burns and its progeny appear only to deal with claims of *constitutional* violations, not violations of military procedural rules. See, e.g., Burns, 346 U.S. at 139 (explaining that federal civil courts have jurisdiction over habeas petitions filed alleging the proceedings under which they were convicted "denied them basic rights *guaranteed by the Constitution*") (emphasis added); Dodson v. Zelez, 917 F.2d 1250, 1252-53 (10th Cir. 1990) (holding that, for a federal court to have jurisdiction to review court-martial proceedings, "[t]he asserted error must be of *substantial constitutional dimension*") (emphasis added). Allen's counsel effectively conceded as much at oral argument, saying, "as I understand it, the full and fair consideration standard is, in fact, only looking for constitutional violations."

-15-

<u>Sykes</u>, 356 F.3d 863, 864 (8th Cir. 2004) (quoting <u>Dakota Indus., Inc. v. Dakota Sportswear, Inc.</u>, 988 F.2d 61, 63 (8th Cir. 1993)). A "narrow exception" to this general rule exists if misrepresentations left the district court with an incomplete picture or the omission prevented the district court from fully and fairly considering the case, although the exception is "rarely exercised." <u>Dakota Indus.</u>, 988 F.2d at 63. However, there is no indication the exception applies here, and Allen offers no caselaw to support his contention that the record should be supplemented. Therefore, we deny his motion to supplement the record.

## III.

Accordingly, the judgment of the district court is affirmed, and we deny Allen's motion to supplement the record.

_____